Nora Ann Helton, Plaintiff-Respondent, v. Grover L. Huckeba, Defendant-Appellant.—270 S. W. (2d) 486.

Springfield Court of Appeals. Opinion filed April 28, 1954.

*Eugene E. Northern* and *Breuer & Northern* for appellant.

*Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Walter S. Pettit, Jr.,* and *Donald J. Hoy,* for respondent.

McDOWELL, P. J.—This is an action by Nora Ann Helton, widow of Walter W. Helton, for damages for the death of her husband caused by an automobile collision December 22, 1950, in Texas County, Missouri. Grover L. Huckeba and Horace Belshe, administrator of the estate of N. A. Sellers, were made defendants. Settlement was made with the estate of N. A. Sellers for $7,000.00 and cause was tried against defendant, Grover L. Huckeba, before a jury, resulting in a verdict and judgment for plaintiff in the sum of $7,000.00. Defendant appealed.

Respondent's cause of action is based upon a number of specific acts of negligence but was submitted on only one, to-wit, "the Defendant Grover L. Huckeba at the time and place of said collision failed to use the highest degree of care in the operation of said Ford automobile in that he carelessly and negligently failed to drive and operate said Ford automobile as close to the right hand side of the highway as practicable."

Appellant's answer was a general denial of negligence on his part and 'a plea that the negligence of N. A. Sellers, driver of the Chevrolet automobile, was the sole cause of the collision and death of Walter W. Helton.

Appellant's first assignment of error complains of the action of the trial court in refusing to sustain his motion for directed verdict.

In passing upon this assignment of error the court must consider all of the evidence offered in the case. Only where there is a complete absence of probative facts to support the conclusion reached by the jury does reversible error appear. If there is an evidentiary basis for the jury's verdict, the jury is free to disregard or disbelieve whatever facts are inconsistent with its conclusion. Ford v. Louisville & N. R. Co., Mo. Sup., 196 S. W. 2d 163; Gray v. Columbia Terminals Co., et al., Mo. Sup., 52 S. W. 2d 809, 810; Muesenfechter et al. v. St. Louis Car Co., Mo. App., 139 S. W. 2d 1102, 1106.

In determining whether respondent made out a factual issue for the jury, the appellate court must view the evidence from a standpoint most favorable to respondent, having regard for the rule that plaintiff has the burden of introducing substantial evidence tending to prove the facts essential to recovery. Schoen v. Plaza Express Co., et al., Mo. Sup., 206 S. W. 2d 536.

On the issue of a directed verdict the question is, was there substantial evidence to make a jury case that appellant was negligent in failing to keep his car as near the right hand side of the road as practicable? Filkins v. Snavely et al., Mo. Sup., 221 S. W. 2d 736.

If respondent failed to make a case on the charge of negligence on which the case was submitted to the jury the trial court erred in not directing a verdict for appellant. Guthrie v. City of St. Charles, Mo. Sup., 152 S. W. 2d, 91; Borrini v. Pevely Dairy Co., Mo. App., 183 S. W. 2d 839.

The evidence shows that Walter W. Helton, husband of respondent, was, on December 22, 1950, killed in an automobile collision between a Ford car, owned and operated by the appellant, and a Chevrolet car owned and operated by N. A. Sellers, in which Helton was riding. The accident occurred between five and six o'clock, just as it was getting dark. The place of accident was on highway 17, about seven miles south of Houston, Texas County, Missouri. Highway 17 runs generally in a north and south direction, is a black top road, 19 feet wide, with no center line marking.

Charlie Holder, a farmer living on the road, just south of the place of accident, testifies that where the road passes by his home it comes up a hill and then enters a straight stretch and makes a curve to the right or east; that the road is a little upgrade but practically level in the stretch. He testified that he saw the Chevrolet pass, going north, just before the accident; that it was traveling on its side of the road with the lights on and, in his judgment, running about 35 miles per hour. He stated he walked across the road from the south to the north side, after the Chevrolet passed, and heard a crash but did not see it. He stated that the collision took place about 200 steps north of his house, just at the edge of the curve. He testified that he and his son were the first persons to reach the scene of accident; that there were no other cars there at the time. He said he first observed an old gray

headed man under the wheel of the Chevrolet, dead; that beside him was a younger man slumped under the dash, dead. He described the position of the cars after the accident as follows: "A. Well, they was sitting in,—kinda in this shape (indicating), see with the Chevrolet's wheels back just pretty well to the edge of the blacktop, see, and the Ford was the same way on over the other way, with their noses pointing together this way (indicating), see, out in the road."

Charlie Biggs testified that on the date of accident, N. A. Sellers purchased a new Chevrolet automobile in Summersville, a town about 25 miles south of Houston, in Texas County; that Helton drove the car out to the junction with highway 17 and that from there on N. A. Sellers drove the car north to the place of accident; that he followed along behind the Sellers car driving about 35 miles per hour and stayed about the same distance from the Sellers car; that he did not see the accident. He thought he was about a quarter of a mile behind. He said he could not see the accident until he came up the hill and made a sharp turn to the right and then he saw that it was the Sellers car involved.

Sgt. Earl Barkley testified that he was a member of the State Highway Patrol, stationed in the Willow Springs Division, which includes Texas County; that he arrived at the accident before the cars were moved. He stated two other patrolmen were there at the time he arrived; that he assisted in making an inspection and returned the next day and made an inspection to determine the cause of the accident. He testified that most of the debris, from both cars, caused by the collision, was on the east side of the highway in front of the Chevrolet. He said the collision occurred south of the curve on the straight of way. He gave this answer: "A. The Chevrolet car had gone up the hill to where Mr. Holder's farm is, then the general contour of the ground there is level for quite some distance", and further stated: "A. I believe I would be safe in saying three or four hundred feet, * * * after it passed the barn and got on the top of the hill."

He stated that from the barn to the top of the hill was about 200 feet. He testified that respondent's exhibit 5 shows the road facing the south when the picture was taken. He took a pencil and pointed to a place on the exhibit where the accident happened which, he said, was just opposite a telephone pole. An examination of the exhibit shows that the telephone pole was some feet south of the curve on the level stretch of road described as being three or four hundred feet long. There seems to be no question but what this short level strip of road was straight and a little up grade to the north. He testified he examined the cars as to where they hit. His testimony was:

"Q. Which side was the Chevrolet hit on? A. It was on the right side, the front, the right front."

He identified respondent's exhibits from 1 to 6, inclusive, and testified that exhibit 3 showed the condition of the two cars as they were

at the time (which exhibit we herein insert as a part of the facts). The witness then testified that the Ford car was also hit on the right front side. As to the position of the cars on the road, the witness gave this testimony: "A. Well, when I got there, this Chevrolet was sitting on the,—it would be the east,—it would be the west side of the pavement, with the front end across the center line toward the east. And the Ford was on the east side headed south. There was a lot of debris in front of the Chevrolet, and the battery was out of the Chevrolet there broken; there was a lot of metal off of both cars, a lot of dirt and glass, and I don't know just what all on the pavement, a lot of debris in general off of the wrecked automobiles."

He testified that respondent's exhibit 5 directly shows the contour of the ground of the highway at the place of accident. This exhibit shows the road to be straight and practically level after it passed the top of the hill from the Holder barn for some two or three hundred yards and then the road makes a curve to the east. The witness stated there was a four foot shoulder on the west side of the road which was the lane being traveled by the Ford. He gave this testimony:

"Q. Did the place where this accident occurred, was that on a straight stretch of road between two curves? A. Yes, sir, it was.

"Q. So Mr. Sellers, in his Chevrolet car, and Mr. Helton, who was riding with him, had come up to the hill and west around a curve, around to the curve? A. They·had come up to the hill and leveled off more or less, and were approaching the curve.

"Q. Didn't this accident happen between two curves? A. It happened between two curves on the other side of this farm home; you come up by the farm house up to the hill.

"Q. When you approved this report, you saw it stated in there— said where this accident occurred 'is on a straight stretch but both drivers had just completed a curve'? A. Both drivers had completed a curve.

"Q. Had just completed a curve? A. Had completed a curve. I wouldn't say 'just completed a curve.'

"Q. That is what the report says, doesn't it? A. Yes, sir."

The witness testified that patrolmen Earl Walker had made a written report to the Division of the State Highway Department as to the conditions of the cars and road found at the scene of accident; that he had read and approved this report which is in evidence as appellant's exhibit A-2. The witness testified as to side skid marks as follows: "A. I found a skid mark from the center of the pavement, right near the center of the pavement around,—it circled around and made an arch around off the pavement to the left rear wheel of this Chevrolet."

He said, "A. It wasn't a continuous mark; it was a bouncing mark, probably six or seven or eight skid marks, what I mean a bouncing mark where it wound around like that (indicating)."

"Q. Where did they stop with reference to the left hind wheel of the Chevrolet? A. They stopped at the hind wheel. There was skid marks on the gravel where they stopped."

He stated that as near as he could tell they began about the center line or a little to the right, right up against the center line. He stated that rubber tires make an uneven rugged mark and that these marks were that kind and were very plain. He testified there were no skid marks on the pavement made by either car by virtue of applying the brakes. He testified that plaintiff's exhibit 7 was made from appellant's exhibit A-2 and that the position of the cars shown on these exhibits were as they showed after the accident. (We make exhibit A-2 part of the facts.)

On cross-examination, witness was asked if he knew where the Chevrolet car was prior to the time it began to make the skid marks and answered: "A. No, sir, I wouldn't. I would only have to assume where it was."

H. M. Lower testified he went to the scene of accident with Sgt. Barkley; that he removed the debris from the road so that travel could be resumed; that he found a mark or scratch on the east side of the center of the road beginning about five feet from the center, which arched around to the right front tire of the Chevrolet; that it looked like it was where it had rubbed the pavement; that he could not tell whether the mark was made by a wheel or bumper but that it was made by some metallic substance. He said it led to the right front tire and stopped. He also testified that the debris from both cars was on the east side of the road in front of the Chevrolet.

Appellant's testimony, in no way, aids respondent's case. Both occupants of the Chevrolet car were killed. There were four people in the Ford at the time of the accident with appellant driving. Appellant's cousin, Joseph L. Huckeba, sitting beside appellant was killed. D. C. Dearman and Bobby Robinson were riding in the back seat. Both were injured and taken to a hospital and knew nothing about what took place after the accident. Dearman's deposition was offered in which he testified definitely that appellant was on his side of the road at time and place of accident and that the Chevrolet was on the same side of the road or the west side of the road at such time. He stated appellant could not have done other than what he did do.

Appellant testified positively that he was on his right side of the road near the edge of the pavement; that the Chevrolet car was on the wrong side of the road at the place of accident. Appellant was 27 years old and was going to his home in Georgia from Fort Leonard Wood, where he was stationed as a soldier. He stated he was driving about forty miles an hour or maybe a little faster at place of accident. He was asked to describe what happened and gave this answer: "A. Well, we were just jogging along down the highway there, and seemed like we were getting into,—fixing to get into a curve or maybe got in

a curve and all at once two lights popped up in my face just like something shot at you, seemed like, and I don't know whether I said or some of the rest of the boys said, 'He is going to hit us.' And about this time he was on my side of the road, and I was on the right and he was on the same side I was, well, I just had a split second and I didn't know hardly what to do. I said, 'Maybe if I jerk my car to the left that I can miss him'; whether I got my car jerked to the left, I couldn't say, but that was the intention, to jerk it. I didn't know what was on the right. * * *"

He gave this further answer: "A. When the lights popped up in front of me, I knew, unless something happened just in the time you pop your finger nearly, we was going to have a wreck."

He stated he was knocked out and knew nothing more about what happened.

Appellant's exhibit A-2, which was the report of the highway patrolman making the investigation of the accident, had this in the report:

"Driver #2, when contacted 5 days after the accident, stated the other car came over a small hill and right at him and when he didn't go back on his side, he pulled to the left trying to go around him. Driver #1 was killed instantly. The cars met almost headon and both cars were damaged most on the right front. The point of impact could not be determined and there were no skid marks. Where this accident occurred is on a straight stretch, but both drivers had just completed a curve. Car #1 came to a stop with the right rear tire 3 feet off the road; the left front wheel of #2 was 4 feet from the edge of the road."

On the issue of a directed verdict, the question is whether the respondent made a jury case of negligence of appellant in failing to keep as close as practicable to the right hand side of the highway.

Respondent has the burden of introducing substantial evidence tending to prove that appellant failed in his duty to keep his car as close to the right hand side of the road as practicable and that said failure caused or contributed to the death of respondent's husband. Respondent, first, relies upon evidence that the debris from the cars in accident was mostly in the east lane of traffic and in front of the Chevrolet, this lane of traffic being the lane which should have been occupied by the Chevrolet.

The rule of law as to circumstantial evidence is stated by the Supreme Court in Ruby v. Clark, Mo. Sup., 208 S. W. 2d, 251, 254, as follows:

" 'Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the

necessary facts.' Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. 2d 31. * * *"

In Schoen v. Plaza Express Co., Mo. Sup., 206 S. W. 2d 536, the same factual question, that is, as to whether plaintiff made a submissible case of showing primary negligence of the defendant in failing to keep his truck as close to the right hand side of the highway as practicable, was before the court. There were no eyewitnesses to describe the circumstances and evidence was offered as to the debris and parts of the car being on the west side of the road for the puposes of showing the place of impact. The court stated the following rule of law on page 538 of its opinion:

"It is a fundamental rule that an appellate court, in determining whether a plaintiff has made out a factual issue for consideration by a jury, must view the evidence from a standpoint most favorable to plaintiff—viewing the evidence from such a standpoint, however, the appellate court must have a regard for the rule that the plaintiff has the burden of introducing substantial evidence tending to prove the facts essential to recovery.

"In the instant case an eyewitness' account of the tragedy does not greatly aid in tending to establish the circumstances of the collision. There is a 'void' in plaintiff's direct evidence as to the movement and the relative positions of the tractor-trailer truck and the Ford automobile upon the highway immediately preceding and at the time of the collision. Consequently, the plaintiff, perforce, relies, at least in part, upon circumstantial evidence.

" 'Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts.' " (See cases cited therein).

In this case the court held that the evidence of the scattered broken glass, the handle of the Ford car door, and the truck's fuel tank found west of the pavement and the fact that the Ford automobile came to rest on the west shoulder of the highway was not sufficient evidence to show point of collision. The court said on page 539 of the opinion:

" * * * yet, it could not be stated with reasonable certainty that this would be so in every such situation. The vehicles being of different weight and size; traveling, no doubt, at different speed; and colliding with great force and at an unknown angle—it would be impossible to reason out or mathematically determine just where the broken-off parts would be cast. * * *"

In Muesenfechter et al. v. St. Louis Car Co., Mo. App., 139 S. W. 2d 1102, 1106, the court states this rule of law:

" * * * The rule is, that where evidence is such as would support either of two contradictory inferences or presumptions respecting the

ultimate facts there is a failure of proof, since it leaves the subject of liability in the field of conjecture. Speakman v. Kurn, Mo. App., 115 S. W. 2d 185."

In Bowers v. Columbia Terminals Co., et al., Mo. App., 213 S. W. 2d 663, the court affirms the rules of law laid down in the above cited cases. On page 670 of the opinion the court makes this statement as to law:

"It is frequently said that the facts and circumstances shown must be such that the necessary facts to support a verdict may be inferred and must reasonably follow, and that the evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." (Citing many cases).

The court further states on page 670 of the opinion:

"* * * For the inference to be legitimate, the circumstances must of course point to the desired conclusion with reasonable certainty; and it is not enough that they may be merely consistent with such a conclusion, or that they may give equal support to inconsistent and contradictory conclusions. * * *

"While it is not the rule in this state that for a conclusion to be supported by circumstantial evidence, the proof must rise to a degree of certainty which will actually exclude every other reasonable conclusion but the one desired, it is nevertheless held that the proof should have such a tendency, since the force and effect of circumstantial evidence depends upon its incapability of explanation or solution upon any other supposition than that of the truth of the fact which it is adduced to prove. Fritz v. St. Louis, I. M. & S. R. Co., 243 Mo. 62, 148 S. W. 74; Bates v. Brown Shoe Co., supra; Wise v. Standard Oil Co., Mo. App., 198 S. W. 2d 1014. But even though it is not enough to defeat recovery that the circumstances may support inconsistent conclusions of variable probability, if the facts proved by the party having the burden of proof give no more than an equal basis for two or more inconsistent conclusions as to the existence of an essential fact, such party has in that event failed to remove the case beyond the realm of speculation and conjecture, and the facts essential to his recovery are not established by legitimate proof. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. 2d 626; Lappin v. Prebe, supra; Muesenfechter v. St. Louis Car Co., Mo. App., 139 S. W. 2d 1102; Pape v. Aetna Casualty & Surety Co., Mo. App., 150 S. W. 2d 569."

In Filkins v. Snavely et al., Mo. Sup., 221 S. W. 2d 736, Judge Hyde, speaking for the court, held that the physical facts and surrounding circumstances with inferences that might reasonably be drawn therefrom were sufficient to make a jury case of the negligence submitted, at least, with the statements of the driver in his testimony that he did not swerve to the left before the collision and cited Ruby

v. Clark, 357 Mo. 318, 208 S. W. 2d 251; Payne v. Reed, 332 Mo. 343, 59 S. W. 2d 43.

In this case Judge Hyde comments on the opinion rendered in Schoen v. Plaza Express Co., Mo. Supp., 206 S. W. 2d 536, which we have cited and quoted in this opinion. He made this comment:

"'* * * However, the evidence in that case was much different. The vehicles involved were found on opposite sides of the highway and tracks made by the transport appeared on the east shoulder of the highway which was the right side for this northbound vehicle. Furthermore, the contact in that case was with the side of the tractor at an angle and not with the front end thereof; but most important, there were no such markings of the place of the collision as the gouge east of the center line in this case and the scratches leading directly from it to the broken front axle of the coupe. * * *"

In Borrini v. Pevely Dairy Co., Mo. App., 183 S. W. 2d 839, 844, this principle of law is announced:

"In construing this statute, it has been held that one traveling on the highway is not necessarily guilty of negligence when turning to the left, because one turns to the left in an attempt to avoid another vehicle approaching from the opposite direction; but, that the question as to whether such negligence exists depends upon the facts and circumstances of the particular case. Under appropriate circumstances, a motorist meeting another automobile may turn to the left." (See cases cited therein).

"In determining whether an issue of fact for the jury was made in the case at bar, we must view the evidence in its most favorable aspect to plaintiff's case. This, of course, is a fundamental rule of appellate review. At the same time, there is another rule of equal importance, which we must observe in this case, namely, that when a party produces a witness to testify in his own behalf, he ordinarily vouches for the credibility of that witness's testimony, and in the absence of contradictory evidence is bound by such testimony." (See cases cited.) Chenoweth v. McBurney, Mo. Sup., 224 S. W. 2d 114, 117.

The purpose of showing the location of debris was to establish the point of impact between the cars. There was a "void" in respondent's direct evidence as to the movement and the relative position of the Chevrolet car and the Ford automobile upon the highway immediately preceding and at the time of the collision. Consequently, respondent relies upon circumstantial evidence. Respondent's testimony shows that the accident occurred on a straight stretch of road just after the two cars had completed a curve. It shows that both cars were hit on the right front part. This is clearly established not only by the testimony of respondent's witnesses but by the exhibits offered in evidence by respondent. The evidence shows that the Ford car was traveling in a southerly direction and its right front would have

been to the west and the Chevrolet car was traveling in a northerly direction and its right front would have been to the east of the road. The only reasonable conclusion that would follow from this part of respondent's evidence is that the Chevrolet car was on the wrong side of the road at the place of collision and the appellant's evidence that he pulled the car to the left to avoid the collision was correct. Naturally, when the front part of the Ford car on the right struck the front part of the Chevrolet car on the right, which was its east side, the conclusion would follow that most of the debris would be thrown to the east side of the road where the front end of the cars were thrown from the impact.

The rule is that where evidence is such as would support either of two contradictory inferences or presumptions respecting the ultimate facts there is a failure of proof, since it leaves the subject of liability in the field of conjecture. Certainly, here, the ultimate fact as to the place of impact or position of impact on the road would be in the field of conjecture and supposition. Respondent's own testimony on this point refutes the inference which must reasonably follow that the point of impact took place where the debris was. An inference to be legitimate, must be supported by circumstances which point to the desired conclusion with reasonable certainty; and it is not enough that they may be merely consistent with such conclusion, or that they may give equal support to inconsistent and contradictory conclusion. The physical facts show, not only as to where the cars hit, that is, on the right front part of each car, but the location of the cars as shown in e idence after the accident. The Chevrolet automobile was almost dir :tly across the west part of the traveled road, its back end off on the ,ravel about three feet and the front end protruding across the cente line about three feet, just a little to the north and the Ford ca₁ s po:ition with the back wheels across the center line to the west ₁nd tl ﹀ front left wheel to the southeast in four feet of the edge of :he p /ement. The only reasonable conclusion from this testimor ˙ is th .t the Chevrolet was on the wrong side of the road and that th Ford car turned to the left or east striking it on the right front p t a₁ d swinging it around to the east and throwing the back end to e ˙ /est, the Ford going on down the road to the east. The testimo₁ ˙ showed that these cars were four or five feet apart, that is, the ₃ ₁nt ends, east and west and about eight feet apart north and south. his testimony is entirely inconsistent with the contention of respc ᵤ ₁t that the point of impact was where the debris was on the pa⌄ement and such an inference could not reasonably follow.

Respondent's next contention is that side skid marks, to which witness Barkley testified, started near the center of the road and extended in a circle to the west and to the left back tire of the Chevrolet on the gravel. In the first place, this witness said these side skid marks were not continuous but bouncing six, seven or eight skids.

Of course, the purpose of this witness's testimony was to show that these skid marks were made by the left back wheel of the Chevrolet to show that this Chevrolet was on its side of the road at point of impact. How could the jury or anyone tell from this testimony that the first one of these skids was made by the left back wheel? If the car skidded, it skidded with both back wheels and, certainly, the inference would not be any greater to show that the mark on the pavement, if any, was made by the left back wheel more than by the right. This testimony just as well show the car to be on the wrong side of the road as on the right. The fact that after the car left the pavement the left back wheel might have made some impression in the gravel was no reason whatever that the first skids made on the pavement were made by the left back wheel.

It is also the law that when a party produces a witness to testify in his behalf, he ordinarily vouches for the credibility of that witness's testimony and, in the absence of contradictory evidence, is bound by such testimony. Chenoweth v. McBurney, supra.

Witness Barkley who testified as to the skid marks admitted, on cross examination, that he participated in making the examination of the road with two other patrolmen; that Walker, one of the patrolmen, made a written report as to how the accident occurred and, in that report, said there was no physical evidence from which the point of impact could be determined and there were no skid marks. Barkley approved this report, which was inconsistent with his testimony that there were skid marks from the center of the road to the wheel of the Chevrolet automobile. We find that this testimony is inconsistent with respondent's testimony as to the position of the automobiles and as to the place of contact between the two cars, to-wit, on the right front part of each car and, therefore, we hold that the inference that the Chevrolet automobile was on the right side of the road at the time of impact does not reasonably follow and is left to surmise and speculation and that the jury was not warranted in finding that as an ultimate fact of appellant's negligence.

There was one other witness on the part of respondent who testified as to a mark or scratch he noticed on the pavement or black top when the cars were removed from the road and he was cleaning off the debris. He said that this mark or scratch was in a semi-circle starting about five feet from the center line of the road to the east and going to the front tire of the Chevrolet. He did not know whether the mark was made by the wheel or the rim of the front wheel or whether it was made by the bumper. He said it looked like it was made by some metallic substance. We think this testimony is in conflict with the other testimony offered by respondent as set out above and does not aid the jury in finding as an ultimate fact which would reasonably follow that the Chevrolet automobile was on its right hand side of the road at the time of impact and from this finding

that appellant was negligent in not driving his automobile as close to the right hand side of the road as practicable. It leaves the subject of liability in the field of conjecture.

We find that appellant's first contention that the trial court erred in overruling his motion for a directed verdict should be sustained.

We deem it unnecessary to pass upon the other allegations of error complained of by appellant, having found that respondent failed to make a case.

It is the order and judgment of the court that this cause be reversed and remanded with directions that judgment be entered for appellant.

*Blair, J.,* concurs in result. *Stone, J.,* concurs.