NORA ANN HELTON, Respondent, v. GROVER L. HUCKEBA, Appellant, No. 44619—276 S. W. (2d) 78.

Court en Banc, March 14, 1955.

94

*Eugene E. Northern* and *Breuer & Northern* for appellant.

*Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Walter S. Pettit, Jr.,* and *Donald J. Hoy* for respondent.

[79]  DALTON, J.—Action for $15,000 damages for the wrongful death of plaintiff's husband, Walter W. Helton, who was killed in a collision between the automobile in which he was riding as the guest of N. A. Sellers and an automobile operated by defendant Grover L. Huckeba.  Verdict and judgment were for plaintiff for $7,000 and defendant appealed to the Springfield Court of Appeals.  That court reversed the judgment and remanded the cause with directions that judgment be entered for defendant-appellant.  Helton v. Huckeba (Mo. App.), 270 S.W. (2d) 486.  On application of plaintiff-respondent the cause has been transferred to this court and we shall review the record as on original appeal.  Section 10, Art. V, Const. of Missouri 1945.

It was admitted that Walter W. Helton was, on December 22, 1950, riding in a Chevrolet automobile which was being operated by N. A. Sellers northwardly on State Highway No. 17, in Texas county; that on the same date defendant Huckeba was driving a Ford automobile southwardly on the same highway; that, at a point approximately seven miles south of the junction of State Highway No. 17 and U. S. Highway No. 63 in Texas county, a collision occurred between the said automobiles; and that, as a result of said collision, Walter W. Helton was injured and died on said date.  The record further shows that N. A. Sellers, the driver of the Chevrolet, was killed in the same

98

collision and that, of the four occupants of the Ford, one was killed and three were severely injured.

The cause was tried and submitted on a single charge of primary negligence, to wit, "that the defendant Grover L. Huckeba at the time and place of said collision failed to use the highest degree of care in the operation of said Ford automobile in that he carelessly and negligently failed to drive and operate said Ford automobile as close to the right-hand side of the highway as practicable." See Secs. 304.010 and 304.020 RSMo 1949, V.A.M.S.

Appellant first contends that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence because "there was not any substantial evidence of any probative force to show negligence on the part of the defendant." This assignment requires the consideration of the evidence favorable to plaintiff on this issue, most of which evidence has been reviewed in detail and with particularity in the opinion of the Springfield Court of Appeals. Reference is had to said opinion for a more detailed statement of the evidence. Helton v. Huckeba, supra. Some additional facts will be stated in the course of this opinion. Many of the applicable principles of law have also been reviewed at length in said opinion and they will not be repeated here, however, we are unable to agree with the conclusions reached by the court that plaintiff failed to make out a submissible case of negligence, and that none of defendant's evidence aids the plaintiff's case.

In reviewing the record we must consider the evidence favorable to plaintiff and the favorable inferences therefrom and disregard defendant's evidence, unless it aids the plaintiff's case, and disregard all unfavorable inferences from plaintiff's and defendant's evidence, as the jury had a right to do. In other words, we must review the evidence favorable to the verdict of the jury and remember that the credibility, weight and value of the evidence [80] was primarily for the jury and the trial court.

From the favorable evidence in the record, the jury could have found the facts to be about as follows: On the afternoon in question, Charlie Biggs accompanied by Helton (plaintiff's husband), Sellers and Wormington, drove from Lebanon to Summerville, where Sellers purchased a new 1950 Chevrolet automobile and, later, started driving it northwardly on Highway No. 17 toward Lebanon, accompanied by Helton. Biggs, following in another automobile, didn't drive over 35 miles per hour and Sellers was "just a little ahead." Both automobiles were traveling at about the same speed. Biggs saw the taillight of the Chevrolet go around a curve ahead of him and knew when the wreck happened. He came upon it at once and saw "smoke going up over the cars." His automobile was the first car to arrive after the collision and he did not meet or pass any cars at that time. Charlie Holder, a farmer residing a couple of hundred steps south from the

point of collision, was coming up as Biggs stopped. Holder had seen the Chevrolet pass his place going north with its lights on, at a speed of about 35 miles per hour and being operated on its proper (east) side of the highway. The time was between five and six p.m.; "it was getting dark." Holder had seen the Chevrolet coming and had waited for it to pass, he had also seen a second car coming behind, but he walked on across ahead of the second car and had gotten across when he heard the crash. When he and his son heard and then saw the collision, they went to it. There were no cars between the Sellers' and the Biggs' cars. The road was an ordinary two-lane black top road with a gradual upgrade near the Holder house to the point of collision, but steeper near the Holder house. The road makes a bend to the right "but not too much" as one goes north. The bend is not right after you break over the top of the hill, but after "you get on the level." The Chevrolet "had just barely got to maybe where the road started to bend the least bit," at the end of the curve nearer the Holder house. It hadn't gotten on the main curve going north. The wreck had happened on a straightaway south of the curve. The Chevrolet was not in the main curve. The Ford, approaching from the north, going south, would have been on the outside of the curve. There was an open, safe, four foot shoulder on the right going south. The collision occurred on level ground. The top of the hill was less than 200 feet from the Holder barn. Immediately after the collision, the front ends of the two automobiles were pointed somewhat together and 8 or 10 feet apart, with the Ford southeast of the Chevrolet. There is some confusion as to directions. One witness said the road goes east and turns southeast in going north and that the Holder barn was on the south side of the road and the house on the north. Plaintiff's exhibit No. 7, an enlargement of that part of defendant's exhibit A-2 which purports to show State Highway No. 17, correctly shows the relative positions of the two automobiles immediately after the collision.

Most of the debris resulting from the collision was in the northbound lane. The back wheels of the Chevrolet were off the pavement, it was headed east with the front end protruding some three feet over the center line and onto the east side of the pavement. There was "a skid mark from the center of the pavement, right near the center of the pavement around,—it circled around and made an arch around off the pavement to the left rear wheel of this Chevrolet. * * * It wasn't a continuous mark; it was a bouncing mark, probably six or seven or eight skid marks. * * * You could trace those bouncing marks. They stopped at the hind wheel. There was skid marks on the gravel where they stopped." The skid marks could be traced to the left hind wheel of the Chevrolet. A rubber tire skidding sideways had made an uneven ragged mark that showed "very plain" on the pavement. "It was a rough, irregular mark."

The Chevrolet had been hit on its right front side. "The right side of the Ford hit the right side of the Chevrolet on the front." The right front portion of each automobile was badly wrecked and the right [81] front tire of each automobile was deflated (see plaintiff's Exhibit No. 3, Helton v. Huckeba, supra, 270 S. W. (2d) 486, 489). The Ford had stopped on its left side of the highway, headed at an angle, southeast and the front ends of both cars were on the east side of the pavement. "There was a lot of debris in front of the Chevrolet, * * * a lot of metal off of both cars, a lot of dirt and glass * * * a lot of debris in general off of the wrecked automobiles," and "anti-freeze from these radiators." State Highway Patrolman E. L. Walker made a written report on the collision and signed it. Sergeant Earl Barkley had read and approved the report. The report was marked defendant's Exhibits A-1 and A-2. After Sgt. Barkley had testified and had been cross-examined, the exhibits were offered in evidence by defendant (apparently on the theory that the report was in conflict with Barkley's testimony, since it stated, "there were no skid marks."). On objection by plaintiff that the exhibits were hearsay, the court admitted them "for the purpose of impeachment only."

Defendant's Exhibit A-1 contained an alleged statement by defendant to Patrolman Walker, as follows: "I saw him coming at me and when he didn't pull over, I pulled to the left." Defendant's Exhibit A-2, contained an alleged statement by defendant to Patrolman Walker to the effect that when the driver of the on-coming Chevrolet did not go back to his side he (defendant) "pulled to the left trying to go around him." See 270 S.W. (2d) 486, 489.

When the debris was cleared off the pavement in front of the Chevrolet, certain marks were apparent on the pavement. "There was an arch formed down around this Chevrolet, where it had rubbed the pavement. There was oil and water and battery acid there." The mark started around five feet over from the center of the highway, on the Chevrolet's east lane, and arched around in a sort of semi-circle to the right-hand front of the Chevrolet to the right front tire. The right front wheel of the Chevrolet was on the mark and the tire had been knocked down. The mark looked like a metallic scratch or mark on the pavement. It could have been made by the rim or bumper or any metallic substance. The mark was not gouged·in any depth into the pavement, but "showed plain enough" for you to "see where the mark was." "There was plenty of light there" so that the mark could be seen.

Since appellant contends that defendant's evidence does not aid the plaintiff's case, we review portions of defendant's evidence. Defendant had taken the deposition of D. C. Dearman, who was one of three passengers in defendant's automobile. The deposition was taken after Dearman had instituted an action for damages against defendant to recover for personal injuries sustained in the collision, and he

(Dearman) was cross-examined with reference to the particular allegations of negligence set forth in his petition as filed and pending in Texas county. In the trial of the present case the parties agreed that the deposition and the attached exhibit (the Dearman petition, supra,) could be offered and received in evidence and that neither party would make an objection, and this was done. Dearman testified that he and his companions had a four day pass from Fort Leonard Wood and that they were headed for Carrollton, Georgia, 625 miles away. Defendant was driving south on State Highway No. 17, "going around 40 to 45 miles an hour." It was "just dusky dark," when the headlights of an automobile traveling in the opposite direction suddenly appeared in front of them. "It was right near us before anybody ever seen the lights." When these lights came into view, defendant was driving on his right-hand side of the road and the approaching lights were completely over on the same side, that is, on defendant's side of the road. When the headlights of this automobile traveling in the opposite direction "all of a sudden came" into view, defendant "turned his car and slowed down" and the impact took place.

On cross-examination, Dearman admitted that he had authorized Edward V. Sweeney, an Attorney At Law of Monett, Missouri, to file a suit against defendant [82] Huckeba for damages for personal injuries sustained in the mentioned collision; that he had had correspondence with said attorney with reference to said suit; that the suit, which was filed December 31, 1952, in Texas county, was still pending with his consent and approval; and that it had not been settled. He disclaimed knowledge or authorization of the specific allegations. Plaintiff's counsel then, without objection, read into evidence a certified copy of.the petition which Dearman had filed against defendant Huckeba. The petition charged defendant with negligence in driving at a high, dangerous, excessive and unreasonable rate of speed; failing to keep and maintain a properly vigilant lookout for other vehicles on said highway; failure to drive as near the right-hand side of the highway as practicable; failure to turn to the right of the center of the highway so as to pass without interference, et cetera. The exhibit was properly admitted in impeachment of Dearman's testimony. See Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W. (2d) 122, 125(3).

Defendant in his own behalf testified: "Well, we were just jogging along down the highway there, and seemed like we were getting into, —fixing to get into a curve or maybe got in a curve and all at once two lights popped up in my face just like something shot at you, seemed like * * *. And about this time he was on my side of the road, and I was on the right and he was on the same side I was, well, I just had a split second and I didn't know hardly what to do. I said, 'Maybe if I jerk my car to the left that I can miss him'; whether I got my car jerked to the left, I couldn't say, but that was the intention, to jerk

it. I didn't know what was on the right. * * * Well, I was over pretty close,—just to the end of the pavement on the right. * * * I couldn't see well right there. When the lights got in my face, up in front of me, I didn't have time to look no way, to the right or left or nothing. * * * He was right up in my face. * * * I do know when I saw them it was right in front of me there. * * * I don't admit that I pulled. I admit that I,—that my intention was to pull; whether I pulled any or not, I don't know." Defendant further testified that Dearman had talked to Attorney Sweeney and had then brought a suit against him (Huckeba) and that the suit was still pending.

Plaintiff's counsel cross-examined the defendant as to the alleged statements he had made to the patrol officers and reference was made to the report (defendant's Exhibits A-1 and A-2). While defendant remembered that two patrolmen talked to him, he didn't know what he had told them, or whether the statements were true. Neither the report, nor any conflicting statements were offered in evidence by plaintiff in impeachment of the defendant's testimony.

▇ As stated, appellant contends that there is no evidence in the record from which the negligence charged and submitted can be inferred, "or from which the jury could reasonably infer such negligence"; that there is no evidence of any probative force in the entire record from which the positions of the respective vehicles involved, prior to or at the time of the collision, can be determined; and that to say "there is circumstantial evidence as to where the vehicles were at the time of the impact requires guesswork, conjecture and speculation." Appellant relies upon and cites cases in support of two abstract principles of law, as follows: (1) "Negligence is never presumed." Joplin v. Franz (Mo. App.), 240 S. W. 209; Borrini v. Pevely Dairy Co. (Mo. App.), 183 S.W. (2d) 839. (2) "Where evidence is such as would support either of two contradictory inferences or presumptions respecting the ultimate facts, there is failure of proof, since it leaves the subject of liability in the field of conjecture." Bowers v. Columbia Terminals (Mo. App.), 213 S.W. (2d) 663; Muesenfechter v. St. Louis Car Co. (Mo. App.), 139 S.W. (2d) 1102. Appellant also contends that the facts and circumstances proven by plaintiff do not exclude guesswork, conjecture and speculation as to the existence of the necessary facts to show negligence. Schoen v. Plaza Express Co. (Mo. Sup.), 206 S.W. (2d) 536.

▇ The Borrini and Bowers cases are particularly relied upon. The Borrini case may be distinguished upon its own peculiar facts, including the type of road and traffic conditions. A different charge of specific negligence was involved, to wit, negligence in failing (on meeting a motor vehicle coming from the opposite direction) to turn to the right of the center of the highway so as to pass without interference. In that case certain direct evidence on plaintiff's behalf excluded her from the benefit of certain favorable inferences. The

Bowers case was submitted on negligence in failing to keep a lookout ahead and laterally for persons on the street. In that case there was no evidence that the deceased had proceeded in a straight course from where last seen by the witnesses, nor as to where he had been during an extended interval of time, nor that he had been in a position where he could have been seen by the truck driver had the driver kept the lookout required. The cases are not controlling under the facts of the present case.

On the record here presented it was for the jury to determine the place of the collision. On this issue the jury could consider the evidence as to the location of most of the debris from both cars upon the traveled portion of the highway more than three feet east of the center line of the highway, the semi-circular marks upon the pavement, the location of the respective automobiles immediately after the collision, the testimony of defendant himself that immediately before the collision he intended to turn to the left, the testimony of Dearman that a turn was made, together with all other facts in evidence, and the jury could infer and find that the collision occurred on the east side of the highway and that defendant turned the Ford automobile from the west side of the highway to the east side immediately prior to the collision. Filkins v. Snavely, 359 Mo. 356, 221 S.W. (2d) 736, 737; Brawley v. Esterly (Mo. Sup.), 267 S.W. (2d) 655. And see Hamre v. Conger, 357 Mo. 497, 209 S.W. (2d) 242, 249(10).

Appellant, however, contends that there is no evidence from which the position of the Chevrolet automobile immediately prior to the collision can be determined, except the testimony of defendant and Dearman that the Chevrolet was upon the west side (its left side) of the highway and directly in the path of defendant's automobile. Plaintiff was in no way bound by the testimony of defendant and Dearman that the Sellers automobile was on its left side of the highway and directly in front of defendant's automobile, when defendant turned his automobile to the left. The jury could believe or disbelieve all or any part of this testimony. For the purpose of determining defendant's right to a directed verdict we disregard all of defendant's evidence, unless it aids the plaintiff's case. The jury could believe and find from the fact that the front and right-hand side of the Chevrolet was wrecked by collision with the right front part of the Ford automobile that the Chevrolet had not, immediately before the collision, been on its left-hand side of the road and that it was not returning to its own side of the road, and to the *place* of the collision, immediately prior to the *time* of the collision, and could find that the collision and damage was caused by defendant's turn to the left. In determining the issue of negligence, as charged, the jury could also consider defendant's evidence to the effect that defendant pulled to the left side of the highway rather than to the right shoulder at a time when he was blinded by the lights of the approaching automobile. The jury could

further consider the fact that defendant did not see the lights of the approaching automobile until "a split second" before the collision. See Bowers v. Columbia Terminals, supra, 213 S.W. (2d) 663, 667(4).

Appellant also insists that "there was no evidence whatever regarding the relative positions and movements of the Sellers or defendant's car" immediately prior to the collision. Schoen v. Plaza Express Co., supra. Bowers v. Columbia Terminals, supra. The record in this case is materially different from the record in either of the cases relied upon. There was evidence here that defendant was driving upon his [84] own right-hand side of the highway and that upon being confronted by the lights of the approaching automobile and immediately before the collision he swerved his automobile sharply to the left. Appellant may not question the evidence as to these facts, a finding as to which were included within and submitted by defendant's instruction No. D-2-G. From other evidence in the record the jury could also find that the Sellers car was on its own right-hand side of the highway when it passed the Holder house and at, and immediately before, the collision, as stated.

After a full consideration of all the evidence in this record we must and do hold that the evidence was substantial and sufficient to show that, at the time and place of the collision, the defendant negligently and carelessly failed to drive and operate his Ford automobile as close to the right-hand side of the highway as practicable and directly and proximately caused the collision and Helton's death. Filkins v. Snavely, supra; Brawley v. Esterly, supra. It was for the jury to determine whether or not the facts supported plaintiff's or defendant's theory and whether or not the defendant exercised the highest degree of care in turning to the left.

Appellant next contends that the court erred in giving instruction No. P-1-G for the following reasons: (1) There is no evidence to support it; (2) It gave the jury a roving commission to indulge in guesswork and speculation; (3) It ignored defendant's theory and, when read with defendant's instructions, was misleading; and (4) It ignored the law of this state that under appropriate circumstances, a motorist meeting another automobile may turn to the left. Borrini v. Pevely Dairy Co., supra, and Lewis v. Zagata, 350 Mo. 446, 166 S.W. (2d) 541, 545 are cited. The instruction was plaintiff's principal instruction. Our holdings, supra, are sufficient to dispose of points 1 and 2, supra. The instruction directed a verdict for plaintiff on a particular submitted finding of facts, including one " * * * that the defendant Grover L. Huckeba at the time and place of said collision failed to use the highest degree of care in the operation of said Ford automobile in that he carelessly and negligently failed to drive and operate said Ford automobile as close to the right-hand side of the highway as practicable." Negligence was one of the facts submitted. Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W. (2d)

921, 926 (4). Defendant's theory was submitted by instruction D-2-G as follows: "The Court instructs the jury * * * that a person meeting a car coming from the opposite direction may be justified under some circumstances, in turning out to the left instead of to the right to avoid a collision. And in this connection, you are further instructed that if you believe and find from the evidence that at the time and place of the accident mentioned in evidence defendant Huckeba was traveling on his right-hand side of the highway, and immediately before the collision saw another motor car approaching on the same side or the left-hand side of the driver of the approaching car, if so, and if you further find and believe that it reasonably appeared to defendant Huckeba, who was on the proper side of the road, if you find he was, that there would be a collision unless he turned to the left, and, acting upon such appearance, he swerved his car in that direction, and in doing so did what a person exercising the highest degree of care would have done under similar circumstances, then said defendant Huckeba did not violate the law of the road and was not guilty of negligence and you will find the issues for the defendant." See Lewis v. Zagata, supra; Filkins v. Snavely, supra. We find no conflict between the instructions. The first authorized a verdict for plaintiff upon a finding that defendant negligently and carelessly did certain things, while the second, in effect, told the jury that if the facts submitted by the second instruction were found to be true then the acts submitted by the first instruction were not negligently done. When read together with defendant's instruction, plaintiff's said instruction was neither erroneous in ignoring defendant's theory of defense, or the laws of the state with reference to motor vehicle [85] operation, nor was the instruction misleading as to such law or such defense.

Appellant further contends that the court erred in overruling defendant's motion for new trial for the reason that plaintiff was guilty of fraud and deceit in agreeing with the court and defendant (in order to secure the overruling of defendant's application for a continuance) that, if defendant's witnesses E. L. Walker and W. E. Anderson were present, they would testify in accordance with the facts set out in defendant's application for a continuance and, thereafter, after such facts were read to the jury, arguing to the jury that "they (plaintiff's counsel) made such an agreement to prevent defendant from obtaining a continuance and that the testimony set out in the application was a statement which had been prepared by defendant's lawyer and that they did not believe the testimony was true because Sgt. Barkley was their superior officer and they (the witnesses) would not contradict Sgt. Barkley."

The record shows that, after counsel had stated in argument that defendant's attorney had prepared the statement and that the agreement was made to prevent a continuance, defendant's counsel objected

to the argument. The objection was sustained, subject to plaintiff's right to comment on the testimony read to the jury. Thereafter, plaintiff's counsel proceeded as follows: "I agreed they would testify to it. I didn't agree it was the truth, and I don't agree it was the truth now, and I will tell you why I don't. Sgt. Barkley was over both of those fellows, and he was there present, and he approved the report. And you know and I know that they would not contradict Sgt. Barkley on what he says about it. Now enough for that." No objection was interposed to this argument and no relief was asked. Appellant admits there was no error in overruling his application for a continuance. No error appears with reference to the argument. While it is subject to criticism, counsel did not consider the matter serious at the time. The court sustained the only objection made and no further relief was asked. Appellant's position now is that the alleged "unfair argument" showed that the original agreement was made in bad faith and that a new trial should be awarded, regardless of the defendant's lack of diligence at the trial. The trial court did not agree, nor do we. Blanford v. St. Louis Public Service Co. (Mo. Sup.), 266 S.W. (2d) 718, 721 (1). The assignment is overruled.

■ Appellant's final contention is that "the court erred in failing to grant defendant a new trial for the reason that Sgt. Barkley and witness Holder changed their testimony from that given at the former trial of this cause and this defendant had no knowledge or information as to such change * * * and was taken entirely by surprise at a time and under circumstances where witnesses and evidence to show the falsity of their testimony and the changes in their testimony could not be obtained or produced by the defendant, all of which deprived this defendant of a fair trial. Supreme Court Rule 3.22."

No such issue was presented at the trial. No affidavit of surprise was filed, no delay was requested to get a transcript of the prior testimony of the witnesses. No prior diligence was shown. No error in the course of the trial is claimed. The matter of surprise was attempted to be raised for the first time in the motion for a new trial, which motion was accompanied by a transcript of the prior and subsequent testimony of the mentioned witnesses.

In the application for a continuance it was stated that the testimony given by Sgt. Barkley in the former trial was false and consisted of purported facts which did not exist. Counsel also argued that "defendant didn't know what other facts Sgt. Barkley might testify to at the present trial." Nevertheless, the record shows that counsel had agreed upon a setting of the case for trial on the date on which it was tried, and without a copy of the witness' prior testimony. The matters stated in the motion and shown by the exhibits were directed to the trial court's discretion. That [86] court overruled the motion. No abuse of discretion is shown. The assignment is overruled. Page v.

Payne, 293 Mo. 600, 240 S.W. 156, 161(4). And see Donati v. Gualdoni, 358 Mo. 667, 216 S.W. (2d) 519, 522.

The judgment of the trial court is affirmed.

*Leedy,* C.J., *Dalton, Hollingsworth, Hyde, Ellison* and *Westhues,* JJ., and *Cave,* Special Judge, concur.