**Mary E. LEWIS, Appellant,**

v.

**John D. NELSON, Appellee.**

**No. 16334.**

United States Court of Appeals
Eighth Circuit.

April 14, 1960.

---

David Collins, Macon, Mo., for appellant.

Harry Carstarphen, Hannibal, Mo., for appellee.

Before SANBORN, MATTHES, and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

█ This is a wrongful death action arising out of a collision between two automobiles which occurred in the State of Missouri. Diversity of the parties and the amount in controversy establish jurisdiction. The substantive law of Missouri controls. We shall refer to the parties as they were designated in the trial court.

At the close of all the evidence, defendant moved the court to direct a verdict in his favor. Therein it was asserted that plaintiff's decedent was guilty of negligence that caused and brought about the collision; and that "there is want of any evidence to sustain the charges of primary negligence against the defendant." The court provisionally overruled this motion at the time it was presented, and submitted the action to the jury subject to a later determination of the legal question raised by the motion. See Rule 50(b), Rules of Civil Procedure, Title 28 U.S.C.A. After a verdict was returned for plaintiff, defendant filed a timely motion for judgment "in accordance with motion for directed verdict." After due consideration, the court sustained this after-trial motion, sustained the motion for directed verdict offered at the close of the whole case, set aside the jury verdict, and entered judgment in favor of defendant on plaintiff's cause of action. From this judgment plaintiff has perfected her appeal to this Court.

At the outset, we are confronted with plaintiff's attack upon the sufficiency of defendant's motion for judgment to preserve and present the question of the submissibility of plaintiff's case. As we have seen, in his motion for directed verdict presented at the close of the evidence, one of the grounds relied on was insufficiency of the evidence to sustain the charge of primary negligence. This likewise served as the basis or ground for the after-trial motion for judgment.

██ There is hardly room for misunderstanding as to the requirements of a motion for directed verdict. It "shall state the specific grounds therefor." Rule 50(a), Federal Rules of Civil Procedure. As we pointed out in Randolph v. Employers Mutual Liability Ins. Co. of Wis., 8 Cir., 260 F.2d 461, at page 465, certiorari denied 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573, "(t)he purpose of such requirement is to apprise the court of the movant's position," and failure of a motion to state the specific

ground relied upon is sufficient basis for denying the same. Randolph v. Employers Mutual Liability Ins. Co. of Wis. ibid. While the instant motion for directed verdict could have been more specific by detailing wherein the evidence failed to sustain the charge of negligence, it is apparent that the trial court fully understood that the motion was designed and intended to present the point that there was no evidence affording proof that defendant drove his automobile on the wrong side of the road.[1] We hold that the motion for directed verdict was sufficient to form a basis for the motion for judgment notwithstanding the verdict. Cf. Railway Express Agency, Inc. v. Epperson, 8 Cir., 240 F.2d 189, at page 193.

■ Before getting to the meat of the case, it should be observed that plaintiff patterned her action on the rules of the road which were in effect in Missouri prior to August 29, 1953. Under § 304.020(2) RSMo 1949, V.A.M.S., every person operating a vehicle upon the highways of Missouri was required to keep the same "as close to the right-hand side of the highway as practicable." One of the assignments of negligence in plaintiff's petition charged a violation of the above rule, together with the further allegation that defendant "negligently drove said Cadillac automobile across the center of said highway onto Lewis' side of said highway * * * ." The foregoing statute was repealed and re-enacted in 1953. The new section, § 304.015, subd. 2, V.A.M.S., Laws 1953, p. 587, provides that upon all public roads or highways a vehicle shall be driven "upon the right half of the roadway, except as follows:" (Exceptions not material here). Since the instant collision occurred on March 19, 1958, there was no duty imposed upon defendant to drive and operate his automobile "as close to the right-hand side of the highway as practicable." Berry v. Harmon, Mo.Sup., 329 S.W.2d 784, at page 789. Nevertheless,

in its charge the court adopted plaintiff's theory and submitted failure to keep as close to the right-hand side as practicable as an element of negligence. Perhaps this submission accounted for the verdict, as the jury might well have found that, although defendant operated his automobile on the right side of the highway, he failed to comply with the mandate to drive as close as practicable to the right-hand side thereof. In considering the after-trial motion for judgment, the court recognized that the re-enactment of the Missouri statute had materially changed the rule of the road in the respect noted. However, the court further found that plaintiff's proof failed to show that defendant operated his automobile at any place other than his right half of the road, and consequently plaintiff had "failed to make a factual case" under the law of Missouri.

The meritorious question simply stated is: Was there adequate evidentiary basis to make the issue of whether the defendant drove and operated his automobile on the wrong side of the highway one of fact for the jury?

■ Plaintiff urges upon us the contention that Missouri law must be applied to determine whether a submissible case was made. In considering the test that should be followed, the Supreme Court of the United States in the recent case of Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 926, 3 L.Ed.2d 935, had this to say:

"Lurking in this case is the question whether it is proper to apply a state or federal test of sufficiency of the evidence to support a jury verdict where federal jurisdiction is rested on diversity of citizenship. On this question, the lower courts are not in agreement. Compare Rowe v. Pennsylvania Greyhound Lines Inc., 2 Cir., 231 F.2d 922; Cooper v. Brown, 3 Cir., 126 F.2d 874; Lovas v. General Motors Corp.,

---

1. The contributory negligence of plaintiff's deceased husband was also in the case, and was specifically raised by defendant's motion for directed verdict. The trial court did not pass upon this issue in sustaining the motion for judgment.

6 Cir., 212 F.2d 805, with Davis Frozen Foods Inc. v. Norfolk Southern Ry. Co., 4 Cir., 204 F.2d 839; Reuter v. Eastern Air Lines, 5 Cir., 226 F.2d 443; Diederich v. American News Co., 10 Cir., 128 F. 2d 144. And see Morgan, Choice of Law Governing Proof, 58 Harv.L. Rev. 153, 174, and 5 Moore's Federal Practice (2d ed. 1951), § 38.10. But the question is not properly here for decision because, in the briefs and arguments in this Court, both parties assumed that the North Dakota standard applied."

We followed the teaching of the Supreme Court in Ford Motor Company v. Mondragon, 8 Cir., 271 F.2d 342, 345. The parties have proceeded in this Court on the theory that the Missouri test governs, and since there is little difference, if any, in the state and federal standards, we shall apply what we recognize to be the Missouri standard. Dick v. New York Life Ins. Co., supra; Ford Motor Company v. Mondragon, supra.

We must resolve all disputed factual questions in plaintiff's favor, and give her the benefit of all reasonable inferences to be drawn from the evidence. However, she is not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts. See Russell v. Turner, 8 Cir., 148 F.2d 562, 565; Thompson v. Lillehei, 8 Cir., 273 F.2d 376, 378.

The Missouri courts follow a similar rule in passing upon the submissibility of a case. In Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623, 629, the Court stated:

"Appellant also insists, as stated, that she is entitled to a favorable view of the evidence and to all favorable inferences therefrom. While such is the rule, it is also well settled that outstanding conceded facts may not be disregarded when applying the rule. * * * Nor does the rule require the court 'to disregard the dictates of common reason and to accept as correct or true that which obviously, under all the circumstances in evidence, cannot be correct or true, nor does it require us to give plaintiff the benefit of any other than reasonable inferences.' Hill v. Illinois Terminal Co., Mo. App., 100 S.W.2d 40, 47(4)."

See also, Daniels v. Smith, Mo., 323 S.W. 2d 705, 706, 709, 710. With these guides in mind, we proceed to the evidence:

On March 19, 1958, plaintiff and her husband, the deceased, Loren E. Lewis, were proceeding south on U.S. Highway No. 69 near Cameron, Missouri, with Mr. Lewis driving, when their 1954 Chevrolet automobile came into collision with a northbound Cadillac sedan driven by defendant. Mr. Lewis received injuries which caused his death. There were two automobiles in front of defendant's Cadillac, proceeding north, and one behind, also proceeding in the same direction. The first of these four northbound vehicles was a maroon colored Cadillac, the second was a green Chevrolet, followed by defendant's Cadillac, which was in turn followed by a Ford driven by one Sturm in which Sturm's uncle Mr. Rezac, was riding. There were three passengers in defendant's automobile, his wife, his sister and his brother-in-law.

Since the evidence favorable to defendant should not be considered in resolving the question before us, it is sufficient to say that there was positive direct testimony that at the time of the collision defendant's automobile was at least one and one-half feet to the right or east of the center line, and that, prior to the collision with defendant, the plaintiff's automobile struck the left rear fender of the maroon colored Cadillac (the first of the four northbound vehicles) when it was to the right of the center line.

Mrs. Lewis had no memory of the events surrounding the accident, and the evidence upon which she must rely comes from Sturm, Rezac and Missouri Highway Patrolman W. E. Bryan.

Upon direct examination, this testimony was elicited from Mr. Sturm:

"Q. Did you actually see the impact between the Nelson Cadillac

and Mr. Lewis's Chevrolet? A. *No.* The point of impact was not in my line of vision at the time.

\* \* \* \* \* \*

"Q. Where this occurred was open road, was it? Did the impact occur *east* of the center of the highway? A. *No.*"

During cross-examination this witness stated:

"Q. Now then, with reference to the line of cars that you referred to ahead of you, those cars were on which side of the road? A. The *right* side.

"Q. That is the right side as you went forward. A. That is right.

"Q. And the cars remained on the *right* side at all times? A. That is right.

"Q. They didn't get on the other side of the road? A. *No.*

"Q. You saw the lighter car, I mean the lighter weight car that you have described probably as a [green] Chevrolet. A. That is right.

"Q. The intervening car, you saw that car, the Nelson car? A. That is right.

"Q. And they were all on the *right* side of the road. A. To my observation *they were.*"

On re-cross:

"Q. At all times they (3 other northbound vehicles) were on the east side of the highway, the three cars? A. That is right, to my observation they were, yes sir."

On re-direct, this witness affirmed his prior statement "that the impact did not occur east of the center line."

And finally, on re-cross, the witness testified "that the impact as I can remember was near the center line."

"Q. You wouldn't say it occurred on the west side? A. *No,* because I just—I can remember at the time of the impact the three cars seemed to be very close to the center line, and especially the last two cars at the time of the impact."

By the court: "When you say three cars, you mean the cars that were preceding you? A. Yes.

By counsel: "But you tell us now they did not get on the *west* side of the road. A. Not to my knowledge they did not."

Witness Rezac stated that the Chevrolet (second northbound vehicle) and defendant's automobile (third) were driving very close to the center line; that he would say the impact occurred "at the center of the highway."

From the foregoing testimony of plaintiff's witnesses, it is apparent that they at no time placed defendant over the center line or on the west half of the highway.

Highway Patrolman Bryan arrived at the scene approximately an hour after the occurrence and testified as to the position of the two automobiles. Plaintiff's car came to rest upon the west shoulder, faced in a northerly direction; defendant's vehicle, also facing north, was on the east shoulder; both vehicles were damaged at left front sides; debris was scattered on both sides of the center line. He also described the skid marks upon the surface of the pavement as follows. There was a mark which began two feet *east* of the center line and extended in a northeast direction to the left front wheel of defendant's automobile. Another mark began about two feet *east* of the first mark and extended to the left rear wheel of defendant's automobile and there was a third skid mark which began about seven feet *east* of the center line and extended to defendant's right rear wheel. None of the marks leading to defendant's vehicle was on the west side of the center line. There was also a skid mark on the pavement and shoulder extending to the Lewis automobile. This one began about two feet *east* of the center line (on defendant's side of the road), and about two feet south of the marks leading to defendant's automobile.

In a memorandum opinion pursuant to its order entering judgment for defendant the trial court carefully reviewed in great detail the sum total of plaintiff's evidence, and concluded, as stated, that plaintiff simply had failed to show that defendant at any time crossed the center line of the highway. After our careful consideration, study and analysis of the evidence, we find ourselves in full agreement with the trial court—there is absolutely no showing that defendant drove or operated his automobile on the wrong side of the highway. The most that the favorable evidence establishes is that it was operated at or near the center of the highway. Plaintiff argues and reargues that the testimony of Sturm to the effect that the impact did not occur on the east side of the highway forms a sufficient basis for an inference that the collision occurred on plaintiff's side of the highway, citing the Missouri rule, stated in Millar v. Berg, Mo., 316 S.W. 2d 499, 503, to the effect that the jury is entitled to accept in part and reject in part the testimony of any witness. Assuming, without deciding the point, that this rule would be given effect in a federal diversity suit, the negative statement of Sturm that the impact did not occur east of the center line dwindles to insignificance when considered in context. In Steele v. Woods, 327 S.W.2d 187, 197, the Supreme Court of Missouri observed:

"In order to assess the force and value of any testimony, it may be necessary to look down the mouth of the witness and attempt to see the actual body and shape of the thought which the witness is attempting to express. To do this it is often necessary to keep peripheral understanding and to consider his testimony as a whole, and each expression in relation to the others. The taking of a few isolated words away to themselves and out of context with their surroundings may furnish a distorted, even perjured, conception of the real meaning which the witness is trying to convey."

Here witness Sturm stated positively that he did not see the actual impact, and he repeatedly testified that defendant's automobile and the Chevrolet immediately ahead of defendant were, at all times, on the east side of the highway and never west of the center line. We do not think that the isolated portion of Sturm's testimony relied upon by plaintiff rises to the dignity of proof of defendant's negligence, nor is it sufficient to permit an inference of negligence when placed in its context of uncontradicted and unequivocal testimony completely at variance with such an inference. Cf. Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 577, 71 S.Ct. 428, 95 L.Ed. 547; Globe Automatic Sprinkler Co. v. Laclede Packing Co., Mo.App., St. Louis, 93 S.W.2d 1053, 1056.

Plaintiff insists that under the teachings of Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736, and the very recent case of Thompson v. Jenkins, Mo., 330 S.W.2d 802, a submissible case was made. Obviously, these "wrong side of the road" cases depend very much on the facts upon which each was bottomed, see Helton v. Huckeba, supra, 276 S.W. 2d at page 83, and to our mind, the holdings therein may be distinguished when such facts are considered and compared. On this record we are persuaded to believe that all reasonable men would reach the same conclusion—that is, that plaintiff failed to prove her case—that, to the contrary, her own evidence tended to establish the fact that defendant *was* complying with the rules of the road which required him to drive on the right side of the highway. It is of course possible that the Supreme Court of Missouri, upon this record, might rule that plaintiff's evidence was sufficient to carry her to the jury, but we believe it probable that that Court too would determine that plaintiff "failed to make a factual case." See and compare, Schoen v. Plaza Express Co., Mo.Sup., 206 S.W.2d 536; and

Berry v. Harmon, Mo., 323 S.W.2d 691 [companion case to Berry v. Harmon, Mo., 329 S.W.2d 784, supra]. There is no showing that Judge Weber, who presided at the trial, misconceived or misapplied Missouri law.[2] We are satisfied that he reached a permissible conclusion upon a question of local law. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–735; Knight v. Cameron Joyce and Company, 8 Cir., 252 F.2d 103, 107. Accordingly, the judgment is

Affirmed.

**2.** The trial judge is eminently qualified to pass upon Missouri law, having been a Circuit Judge of that State for fourteen years before his appointment to the federal bench.