Roy Eugene BERRY, By His Next Friend, Mamie Berry, Plaintiff-Respondent,

v.

Victor L. HARMON, Defendant-Appellant.

No. 46796.

Supreme Court of Missouri,

Division No. 2.

May 11, 1959.

Hartman, Guilfoil & Albrecht, E. C. Albrecht, Jr., St. Louis, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, Robert A. McIlrath, Flat River, for respondent.

BARRETT, Commissioner.

On November 2, 1954, the plaintiff, Roy Eugene Berry, then seventeen years of age, was driving his father's 1949 Chevrolet automobile north on Highway 67 when it was involved in a collision with a 1950 Ford automobile driven in a southerly direction by Victor L. Harmon. Both Berry and Harmon were injured in the collision and to recover $25,000 damages for his personal injuries Roy, by next friend, instituted this action against Harmon and Harmon, in addition to an answer, filed a counterclaim against Berry claiming $26,000 damages. Upon the trial of the cause a jury found in favor of the defendant, Harmon, on the plaintiff's cause of action and in favor of Harmon on his counterclaim against Berry and fixed his damages at $6,000. The trial court sustained the plaintiff's motion for a new trial on assigned ground number one, that the jury's verdict was against the weight of the evidence, and Harmon has appealed from the judgment granting the plaintiff a new trial.

The collision occurred about 9 p. m. north of Fredericktown, near a bridge over Village Creek, on a straight stretch of two-lane paved highway with a ten-foot shoulder on each side. The two vehicles were traveling at a speed of approximately fifty

miles an hour when they collided, almost head on. The greater part of the damage to Harmon's Ford was to its left front end and left front fender. The greater part of the damage to Berry's Chevrolet was also to its left front end and to its left front fender and side. For some unexplained reason the right rear fender of the Chevrolet was also smashed. After the collision the Berry Chevrolet was lying on its left side on the east side of the pavement but headed south. Mr. Harmon's Ford was on the west shoulder, headed in a northwestwardly direction with about a fourth of the rear of the car resting on the pavement. Mr. Harmon, who lived in St. Louis, was on his way to Poplar Bluff on a hunting trip, traveling alone. Roy had picked up his girl, now his wife Ruth, in Fredericktown; they got some gasoline, stopped at a cafe and ate a sandwhich and, as he says, "split a beer" and started out Highway 67 towards Flat River. Roy's right to recover and Harmon's liability were submitted upon the hypothesis of Harmon's negligence in that as he traveled south he had "crossed over the center line of said Highway and into the traffic lane for vehicles proceeding in the opposite direction" and had "failed to keep his automobile as near the right-hand side of the highway as practicable." Harmon submitted his right to recover and Berry's liability upon the hypothesis and finding that Berry in traveling north on the highway "swerved his vehicle to the left of the center line of said highway and into the southbound lane thereof." Thus as respondent's counsel say in their brief, "the issues boil down to the question of which party was on the wrong side of the road at the time of the collision."

■ As stated, the jury found this and all other issues in favor of Harmon but the trial court was of the view that the verdict was against the weight of the evidence and for that reason sustained the plaintiff's motion for a new trial. V.A.M.S. § 510.330. A new trial having been granted on this broad discretionary ground, the trial court's view that the verdict was against the weight of the evidence is conclusive in this court unless there has been a manifest abuse of discretion, which in this case is demonstrable only if there was no substantial evidence justifying the submission of the plaintiff's claim of negligence to the jury. Or as the test and this court's function is sometimes stated, "we will examine the record to ascertain if there was sufficient substantial evidence to justify the submission of plaintiff's case to the jury; or to sustain a verdict for plaintiff, the party to whom the new trial was granted." Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 169, 227 S.W.2d 660, 661; Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824. In the two latter cases a review of the records demonstrated that there were no established circumstances from which the inference of negligence could be drawn and the orders granting new trials were set aside and verdicts for the defendants were reinstated. In the following cases, by the same standards, there were facts and circumstances from which the inference of negligence could be drawn and the orders granting new trials were sustained. Schmidt v. Allen, Mo., 303 S.W.2d 652; Dawson v. Scherff, Mo., 281 S.W.2d 825; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410.

The plaintiff, Roy, was unconscious for several days and had no recollection of the collision, when, where or how it occurred; he could only "remember about four car lengths away from the Harmon vehicle" and at that time, he says, "I was on my side of the road and had perfect control of my car." Harmon's automobile was four car lengths away and on cross-examination Roy said that it too was coming straight down the highway on its side of the road with its headlights burning and the automobile was not turning or swerving. Roy's then guest and companion, June Pogue, did not testify. Thus the only person who could and did testify and relate how and why the collision occurred was the defendant, Harmon. Harmon said that when he first saw the plain-

tiff's automobile it came around a curve about one-half mile away and there was then nothing unusual in its approach until "possibly about the time he came across the bridge (450 feet from the place of collision) —the car seemed to swerve over across the center line and back into his lane." Roy was only momentarily in Harmon's south-bound traffic lane "and then he came back on over" and Harmon said, "I let up on my gas," both vehicles then traveling at a speed of about fifty miles an hour. "After that he seemed to go a little ways and started back into my lane again" and it was his estimate that the automobiles were about one hundred yards apart. When Harmon saw Roy's automobile in the south-bound traffic lane a second time he said, "I pulled my car over onto my shoulder," com-pletely onto the shoulder but, "He came on over into my lane and then over onto my shoulder with me." He was of the opinion that the left wheels of Roy's car were on the west shoulder and "After I saw he was on the shoulder and there was no other place for me to go, I pulled back into my lane to give him my shoulder." The vehicles were then "possibly" thirty feet apart and "After I started back into my lane, his car immediately cut back to his right real sharp" at a "forty-five" angle or "even sharper." It was then and there, according to Harmon, that the automo-biles collided, "I would say about the cen-ter of my lane," the right wheels of his automobile being still on the west shoul-der. Harmon's automobile came to rest "over to the right—my shoulder—at about a ninety degree—headed west—it was maybe just the bumper hanging over on the pavement—the rest was on the shoulder." He says that Roy's car was stopped "on the other side of the road in his pavement, headed back south." In this narrative and view of the collision there is obviously no evidence from which the inference could be drawn that the collision and injuries resulted from Harmon's negli-gence in the two particulars submitted in Berry's instruction, that Harmon "crossed over the center line * * * and into the

traffic lane for vehicles proceeding in the opposite direction" or by reason of his failure "to keep his automobile as near the right-hand side of the highway as practi-cable." On the other hand, if believed, Harmon's evidence supports the hypothesis of his counterclaim that the collision was caused by Roy's negligence in operating his automobile to the left of the center line of the highway and in the southbound traffic lane. Lomax v. Sawtell, supra.

A highway patrolman, parked at the inter-section of Highways 67 and 70 at Frederick-town, received a report of the collision and was there in a few minutes. He was the plaintiff's principal witness and by his own statement went far beyond the call of official duty on behalf of the plaintiff's cause. The patrolman described the highway, the loca-tion of the automobiles and the general surroundings in detail; his description of the location of the vehicles did not differ materially from that of Harmon's. He said that he talked to Harmon at the scene, "I talked to him there at that time and he said he didn't know what happened at that time, —he looked to me at that time like he was sort of dazed, and he said he didn't know what happened." Harmon had said that he was "knocked out" temporarily and that he "came to at the scene" after he had gotten out of his car and was walking around on the west side of the highway. Subsequently Harmon was taken to a doctor's office and to a hospital in Bonne Terre and there the patrolman again talked to him and Harmon said, " 'All I could see was he was coming at me. I saw I could not miss him by stay-ing on my side of the road so I cut to the left to try to miss him.' "

The patrolman examined the vehicles, the debris and the highway very carefully but, he said, "I couldn't find any skid marks at the scene of the accident at all." He did find broken glass, pieces of metal and oil and grease "from the Berry car there on the road." He said that practically all the de-bris was on the east side of the road "out on the east shoulder." He saw what he thought was an "oil bath air filter" from

Berry's car out in the ditch on the east side of the highway. There was broken glass and a "chrome strip (about a foot long) off a '50 Ford" (Harmon's car) on the east shoulder about four feet from the pavement. In describing the damage to the Berry car he said that it "was hit in the left front end —I would say about two-thirds of the way across the front end. I have pictures to show. The frame on the Berry car was sprung to the left—a slight 'U' to the left, and at least two-thirds of the left front side was demolished, the motor drove back, the frame sprung and it was turned over on its left side." He says that, "strictly from memory," after he got there the first dirt and debris he saw was "about a car length and a half north from the rear end of where the Berry car was laying." The following day, at his own expense, he took several pictures of the automobiles and of the highway to show particularly where he had seen the debris the night before and oil spots on the east side of the highway. These pictures were not a part of his official report and the negatives of those photographs were given to plaintiff's counsel. Another witness, an ambulance driver, saw broken glass and oil on the east side of the highway but he did not see "any debris" because he classified "debris" as "particles of the automobile."

The plaintiff points to the location of the automobiles before and after the collision and to these circumstances and urges that they circumstantially support the inference of Harmon's submitted negligence of driving his automobile over the center line or not as close to the right hand side of the highway as practicable. He particularly points to the debris and oil and grease found on the east side of the road and on the east shoulder and to the fact that the frame of his automobile was bent to the left and says that from the bent frame "plaintiff's automobile must have been moving in a relatively straight line at the time of the collision, this because the force which bent the frame must have undoubtedly been the blow which was angled" and therefore, he argues, Roy

was "on his own side of the road" and traveling in a straight line at the time of the collision. In this connection and to corroborate his theory the plaintiff points to the statement attributed to Harmon: "'All I could see was he was coming at me. I saw I could not miss him by staying on my side of the road so I cut to the left to try to miss him.'"

■ There can be no objection to one's establishing negligence and a cause of action by circumstantial evidence: "Of course facts essential to a recovery may be proved by circumstantial evidence, but the shown circumstances must be such that the necessary facts may be inferred therefrom and they must reasonably follow. The evidence must 'exclude guesswork, conjecture, and speculation as to the existence of the necessary facts.'" Brawley v. Esterly, Mo., 267 S.W.2d 655, 659; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670. But in the Brawley case there were the cogent, forceful circumstances of plainly observable "black marks" on the pavement "coming down the highway from the east" and they were "a little north of the center line," there were some "gouged" marks on the pavement north of the center line, these were in addition to the location of debris from the collision. In this case there were no telling skid marks "at all" and no gouged out place on the highway. In this case it is difficult to say just what inferences are possible from the location of the grease and debris on the east side of the pavement and shoulder (Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242), Roy's automobile was turned over on its left side on the pavement. Similar facts and circumstances were held to be insufficient to support the inference of negligence in failing to drive a truck as close to the right-hand side of the highway as practicable in Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536, 539. In Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, in addition to the debris and its location there were again the telling "marks" on the pavement. Perhaps Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736, is a better illustrative

instance of proof of negligence by circumstantial evidence. There an automobile and a trailer-truck collided on a curve but both vehicles came to rest on the east (plaintiff's) side of the highway where the oil, grease and debris were found and the tractor came to rest on top of the automobile. But there again there was "a freshly gouged out place about four inches long, two feet ten inches east of the center line of the highway and there were scratches leading back from it toward the coupe. This mark dug deeper into the mud and gravel of the east shoulder and led to the front of the coupe." From these physical facts and the truck driver's statement that he did not swerve to the left before the collision it was held that the inference of his negligence in failing "to keep as close as practicable to his right-hand side of the highway" was reasonably permissible.

It is not necessary to consider the force of the evidence that the frame of Roy's Chevrolet was bent to the left or to determine whether Harmon's statement to the patrolman, in the circumstances, was in point of fact an admission that at the time of the collision he was driving to the left of the center line of the highway. The inference to be drawn and of necessity to be found in this case is one of negligence and the burden was upon the plaintiff to adduce evidence from which the inference of negligence could reasonably be inferred. Quinn v. St. Louis Public Service Co., Mo., 318 S. W.2d 316, 323. The circumstances in this case do not with compelling force indicate just where on the highway this collision occurred and even if it be assumed that the evidence supports the inference that at some point on the highway Harmon turned his automobile to the left the fact does not necessarily support the inference that he was negligent in doing so. Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839; Linstroth v. Peper, Mo.App., 188 S. W. 1125. The problem here is wholly one of the reasonably permissible inferences and the facts and circumstances relied on fall within and are governed by Schoen v. Plaza Express Co., supra, Bowers v. Columbia Terminals Co., supra, and Borrini v. Pevely Dairy Co., supra, rather than within the more compelling circumstances of Filkins v. Snavely, supra, Helton v. Huckeba, supra, Dawson v. Scherff, supra, Lomax v. Sawtell, supra, and Brawley v. Esterly, supra.

Since in our view of the record there was not sufficient substantial evidence to justify the submission of the plaintiff's case to the jury there was an abuse of discretion in the trial court's granting the plaintiff a new trial on his cause of action and that part of the judgment is reversed and remanded with directions to reinstate the jury's verdict and to enter judgment accordingly. Graves v. Atchison, T. & S. F. Ry. Co., supra. The defendant, in these circumstances, says that since he adduced evidence of the plaintiff's negligence that the verdict on his counterclaim should also be reinstated. But there was but a single general verdict in favor of the defendant on the plaintiff's cause of action and in favor of the defendant and against the plaintiff on the defendant's counterclaim and the court, of necessity, set the entire verdict aside as being against the weight of the evidence. For the court to have left the counterclaim standing, in the circumstances of this case, would have resulted in an inconsistency. Since the defendant's evidence did make a jury question of the plaintiff's liability the trial court did not abuse its discretion in granting a new trial as to that issue. 66 C.J.S. New Trial § 210 (2), p. 540; Dawson v. Scherff, Mo., 281 S.W.2d loc. cit. 831.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.