Matthew **DOMIJAN, Administrator of the Estate of Nina Domijan, deceased, Respondent,**

v.

**Otis B. HARP and General Motors Acceptance Corporation, Appellants.**

No. 47915.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 12, 1960.

Chapman & Chapman, Thomas W. Chapman, St. Louis, for appellants.

Flynn, Challis & Sumner, Lawrence C. Sumner, St. Louis (William L. Mason, Jr., St. Louis, of counsel), for respondent.

EAGER, Judge.

Plaintiff, as Administrator of the estate of his mother, Nina Domijan, sued for her death which was alleged to have resulted from the negligence of defendant Harp in the operation of an automobile. Harp was a credit supervisor of the corporate defendant. No separate defense whatever was made on its behalf. If one defendant is liable, both are liable. Plaintiff recovered a verdict of $8,000, and defendants have duly appealed.

The deceased, 73 years of age, lived in St. Louis with a son and his wife. She was active, she performed sundry household work, maintained a garden, and was employed at jobs outside the home. She was paid regularly for baby sitting and housework in one home, earning there approximately $50 per month. She occasionally performed services for others, including work for lodges to which she belonged.

The fatal injury occurred about 10:35 p. m. on May 25, 1958, near the intersection of Goodfellow and Lalite Avenues in the City of St. Louis. The death occurred on that day or the next. This intersection had no stop signs or traffic lights. Deceased was a pedestrian, crossing Goodfellow. Harp, driving a new Pontiac car owned by the other defendant, had been visiting his father and mother in Illinois and was returning home with his wife and small daughter in the car. The daughter was asleep and his wife had been dozing, off and on. Harp was the only living eyewitness. Admittedly, the condition of the car was good, including the lights and brakes, and the windshield was at least ordinarily clean; the night was clear and the streets dry. There were street lights at the southwest and northeast corners of the intersection. Harp was 34 years of age at the time of trial and he had had long and varied driving experience. The following facts appeared, largely from his testimony. He was traveling south on Goodfellow; he had come over a crest some distance north of the intersection, traveled a short distance at 25–30 miles per hour, and then slowed his car to 20–25 miles per hour for this intersection; while in the intersection he took his foot off the brake and began to

accelerate. He testified that, after he had gotten through the intersection and while looking straight ahead, he heard a thud, stopped immediately and got out, and then saw that he had struck a woman. At that time his car was approximately in the center of the southbound lane, so he got back in and pulled it over to the curb. The deceased lay with her head only inches from the west curb and her body angled to the southwest. The car was 50–60 feet south of the intersection when it was stopped at the curb; the deceased lay 38 feet south of the intersection, or roughly a car's length behind the car; she wore a dark sweater, printed dress and dark shoes. Her denture and broken glasses were found in the street on to the south, ahead of her body. No skidmarks were found. Harp also testified: that the front of his car was about 20 feet south of Lalite at the time of the impact, or possibly a little less; that he saw deceased "the minute it happened" or "when I hit her"; that the area south of the intersection was not well lighted; that he stopped within approximately a car's length after the impact; that he had no chance to give a warning and did not succeed in swerving the car; that deceased appeared on the right side of his hood. A photograph of the car shows a dent in the front of the hood just inside the right headlights. The substance of Harp's testimony was that he saw deceased just as his car struck her or an instant before.

Mrs. Domijan lived west of Goodfellow, several blocks from this intersection. She had been visiting with a Mrs. Citkovich about two blocks east of this particular intersection, leaving there about 10:15 alone, supposedly to go home. There was no evidence concerning her further movements up to the time of her injury; and there was a measure of speculation as to whether she was crossing Goodfellow from the east (toward her home) or from the west, along with considerable evidence concerning the physical location of the streets, their dead ends and jogs. In the view we take of the case and the briefs, all this will make no difference. The "Missouri Driver's Guide" was received in evidence showing normal stopping distances at given speeds; at 20 miles an hour, the total stopping distance was 43 feet, including 22 feet of reaction time; at 30 miles an hour the total distance was 82 feet, including 33 feet of reaction time. Certain other facts, particularly those affecting the damages, will be referred to later.

 We are met at the outset with a motion to dismiss the appeal for failure to comply with our rules. Appellants' statement of the facts consists solely of abstracts of the testimony of the different witnesses and of certain incidental evidence, in chronological order, with no attempt whatever to make a "fair and concise statement." This does not conform to our rule. Plaintiff-respondent also urges the total insufficiency of two of the "Points Relied On." Rule 83.05(e), V.A.M.R. requires that these "shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed." We have recently been printing this rule in the front of every docket, for the convenience of the Bar. Point I, (a), (b) and (c) of appellants' brief, is as follows: "The Trial Court erred in failing to sustain defendant's Joint Motion for a Directed Verdict filed at the close of all the evidence, and erred for the following reason: (a) The evidence was insufficient to establish actual negligence on the part of the defendants, and that such negligence was the direct and proximate cause of the death of Nina Domijan. (b) Plaintiff failed to make a submissible case against the defendants. (c) Plaintiff failed to sustain the burden of proof by a preponderance of the credible evidence that the death of Nina Domijan was the direct and proximate result of the negligence of the defendants." This is not a compliance with our rule. The quoted matter contains no explanation whatever to show *why* the court was wrong

in any of these rulings. The points relied on "should constitute a short concise outline of the part of the brief called 'an argument' in 1.08(a) (4). The purpose of this is to give the appellate court a short concise summary of what appellant claims the trial court did wrong and why he claims it was wrong." Conser v. Atchison, T. & S. F. Ry. Co., Mo., 266 S.W.2d 587, 589, certiorari denied 348 U.S. 828, 75 S. Ct. 45, 99 L.Ed. 653. And we now add that an additional and equally essential purpose is to inform respondent's counsel just what appellants' contentions really are, and what he is required to answer. Perhaps we could dig the *"why"* out of the 26 pages of argument on this point and its three subpoints in the present brief, but even then there would be no assurance that our summary of reasons would coincide with that of appellants' counsel, or with what respondent's counsel might assume. We shall not attempt to perform this duty for the appellants. The quoted matter is in clear violation of our rule and it will not be considered further. By this time the Bar should have (and most members do have) a fair concept of the meaning of this rule. We shall treat the merits of Point I(d) on the question of legal dependencies along with Point IV on excessiveness; we shall consider the merits of Point II, the sufficiency of which is also attacked. We decline, with some reluctance, to dismiss the appeal in toto on the improper statement of facts, largely because the gist of the evidence on the vital issue of negligence appears in the testimony of one witness.

The first point of the brief to be considered on the merits is No. II, complaining of Instruction No. 1. There counsel have perhaps violated Rule 83.05(a) by not setting out the instruction in full in the argument; however, they have quoted four lines of it and we give them the benefit of the doubt on the exception stated in the rule. The instruction was one on lookout, and we quote it in full as follows: "The Court instructs the jury that under the law the operator of a motor vehicle is required to exercise the highest degree of care to keep and maintain a constant, careful and vigilant watch and lookout ahead and laterally ahead for the presence of pedestrians.

"Therefore, the Court instructs the jury that if you find from the evidence that the defendant Otis Harp failed to exercise the highest degree of care in that he negligently drove the automobile he was operating at the time and place mentioned in evidence, if you so find, into the person of Nina Domijan, without maintaining a proper watch and lookout, if you so find, and that such negligence directly caused said collision with Nina Domijan and that Nina Domijan was killed as a direct result of said collision, then the Court instructs you that in such event plaintiff is entitled to recover against defendants General Motors Acceptance Corporation and Otis Harp and your verdict should be in favor of plaintiff and against said defendants."

█ The first complaint is that this submission was on a theory of law not pleaded, i. e., the failure to keep an adequate lookout. We may concede without discussing the cited cases the general rule that a submission must be within the pleadings and the evidence. Here plaintiff pleaded as primary negligence: excessive speed; failure to stop, slacken or swerve; failure to maintain control; failure to warn; and a negligent turn or swerve. He also pleaded humanitarian negligence and as a part thereof alleged: "Defendants saw, or by the exercise of the highest degree of care could have seen, Nina Domijan upon said street and highway there in a position of imminent peril of being struck and collided with by defendants' said automobile, and that Nina Domijan was oblivious thereof, in time for defendants thereafter, by the exercise of the highest degree of care, * * *." Defendants insist that, since plaintiff did not plead the failure to maintain a lookout as a part of the primary negligence alleged, this sub-

mission was erroneous. Plaintiff answers that he did plead, as a factual allegation, that defendants *could have seen* deceased in time to have avoided her, had they been in the exercise of the highest degree of care; and, arguendo, that it was not necessary to *label* this factual averment, but only to plead the essential facts under § 509.050, RSMo 1949, V.A.M.S., and that the factual allegations may be taken at their face value in the primary negligence submission.

■ There can be no doubt that a major part of the evidence was directed to the issue of lookout,—i. e., *when* did defendant Harp first see deceased and whether he should have seen her sooner, under all the circumstances. Defendants participated in these evidentiary disclosures by showing the dark clothing of deceased, the shadowy conditions of lighting south of the intersection, and that deceased was supposedly crossing south of the intersection. When issues not specifically pleaded are tried by express or implied consent, they are treated as though pleaded. Section 509.500, RSMo 1949, V.A.M.S. And see, generally: Allmon v. Allmon, Mo.App., 314 S.W.2d 457, 463; Copeland v. Terminal R. Ass'n of St. Louis, 353 Mo. 433, 182 S.W.2d 600, 605, certiorari denied 323 U.S. 799, 65 S.Ct. 554, 89 L.Ed. 637; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, 726; Mitchell v. Robinson, Mo., 334 S.W.2d 11, 14. While the cases limit this doctrine rather severely in personal injury suits where specific negligence is alleged (Horvath v. Chestnut Street Realty Co., Mo.App., 144 S.W.2d 165; State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S.W.2d 21), the substance of the rule so announced is that a belated amendment may not be made (or considered as made) which essentially changes the nature of the cause of action. We have no hesitation in holding here that the issue of "lookout" was within "the general scope of the negligence alleged in the petition" (Copeland, supra [353 Mo. 433, 182 S.W.2d 605]), and that the instruction was not given upon a theory not pleaded. It is not necessary for us to hold that every part of a pleading of humanitarian negligence may ipso facto be used in a submission of primary negligence.

■ The other objection to the instruction is that it required "constant" vigilance without qualification, whereas negligence in failing to keep a lookout depends actually upon existing conditions and circumstances (citing Slaughter v. Myers, Mo., 335 S.W.2d 50 and authorities mentioned therein). The word "constant" appears in the introductory, and abstract, portion of the instruction; the body of the instruction rested the liability of defendants upon Harp's failure to exercise the highest degree of care in maintaining a "proper watch and lookout." The word "constant" is defined in part, by Mr. Webster (New International Dictionary 2nd Ed.) as "uniform," "regular," "constantly recurring." So considered, and as ordinarily considered, the term is somewhat relative in meaning. We do not recommend the use of the word in an instruction of this type, but we hold that the instruction here was not prejudicially erroneous.

■ The next point is that it was error to permit plaintiff's counsel repeatedly to mention the prayer of $25,000 to the jury. Defendants cite no authority on this point except an address at a section meeting of the American Bar in which the state of the law in other jurisdictions was discussed. Missouri has not gone so far as to hold that the mention of a lump sum to the jury, as a maximum verdict or as the amount actually asked, is error. Smith v. Kansas City Rys. Co., Mo.App., 204 S.W. 575; Dean v. Wabash R. Co., 229 Mo. 425, 129 S.W. 953; Faught v. Washam, Mo., 329 S.W.2d 588, 602. In Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838, the objection was that the amount being asked was first mentioned in the closing argument of plaintiff's counsel and that defendant had no chance to reply. And, on the subject generally, see

the recent case of Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 21. Plaintiff's counsel was permitted to read in evidence Sections 537.080 and 537.090 (RSMo 1949, V.A.M.S.) of our Wrongful Death Statutes in which, of course, the maximum recovery was stated. The introduction into evidence of domestic statutes (or law) is wholly improper. Heller v. Pulitzer Pub. Co., 153 Mo. 205, 54 S.W. 457. The only objection then made was that the case was not "properly brought" under those statutes. This objection was not sufficient to raise the point now involved. In the final argument counsel again read the damage section (537.090), at which time defense counsel objected that plaintiff had again "mentioned twenty-five thousand dollars"; this objection was overruled. Plaintiff's counsel later read to the jury the instruction stating that the recovery should not in any event exceed $25,000, and that "in naming this amount, the court does not mean for you to find in such sum or in any sum, but mentions the amount beyond which you cannot go, and you cannot go beyond the amount you find from the evidence." Under these circumstances we find no reversible error.

· The last contention to be considered is (a) that the judgment was improper because there was no legal dependency, and (b) that the verdict was grossly excessive. The evidence was that the deceased had, for years, voluntarily contributed certain sums to her children, adults though they were and supposedly self-supporting. These gifts were occasionally made as some special need arose,—delinquent taxes, the purchase of a truck, or when a son was not working,—but it was stated also that some contributions were made more or less regularly. One son testified that he received from $300–$500 a year, another $200–$300, and the daughter approximately $300. The expectancy of deceased on the American Experience Table was 9.47 years, on other tables more.

The test of the right of recovery under our death statutes is the reasonable probability of pecuniary benefit from the continued life of the deceased, or a pecuniary injury from the death,— and not that of strict legal dependency. Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 954, 145 A.L.R. 1176; McCullough v. W. H. Powell Lumber Co., 205 Mo.App. 15, 216 S.W. 803; Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546. The case of Bagley v. City of St. Louis, 268 Mo. 259, 186 S.W. 966, cited by defendants, is not in point; it is discussed in Wente, supra. We know of no Missouri authority barring such a claim as this because of the non-existence of a legal dependency, and the contention is disallowed. We may not philosophize here upon the ethics involved when adult children accept gifts amounting to partial support from a hard-working and elderly mother. That is not our function.

So far as the amount of the verdict is concerned, we note that the jury is permitted a rather broad discretion in death cases. Hertz, supra; Steger v. Meehan, Mo., 63 S.W.2d 109, 115. That discretion "should not be interfered with unless it has clearly been abused." Steger v. Meehan, supra. In view of the reasonable probability of continued contributions to these beneficiaries we cannot say that the amount of this verdict indicates an abuse of discretion. No remittitur is requested (Knight v. Swift & Co., Mo., 338 S.W.2d 795) nor would we be inclined to order one here had it been requested.

The judgment is affirmed.

All concur.