Eileen N. HODGE, Plaintiff-Respondent,

v.

Sanford GOFFSTEIN, Administrator of the Estate of Charles W. Gray, Deceased, Defendant-Appellant,

and

Sorkis J. Webbe, Administrator de bonis non of the Estate of Miles W. Barber, Deceased, Defendant.

No. 51925.

Supreme Court of Missouri, Division No. 1.

Dec. 30, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Feb. 13, 1967.

Morris A. Shenker and Frank B. Green, Jr., St. Louis, for respondent.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for appellant.

WELBORN, Commissioner.

Action for damages for the wrongful death of plaintiff's husband in an automobile accident. The jury returned a verdict for $20,000 in favor of plaintiff and against the personal representative of the driver of one of the vehicles involved. The verdict was in favor of the defendant personal representative of the driver of a second vehicle. Defendant against whom the $20,000 verdict was rendered and upon which judgment was entered has appealed.

The accident out of which this cause of action arose occurred at approximately 1:00 P.M., Saturday, October 1, 1960. The scene of the occurrence was on State Highway No. 79, some 4.6 miles north of the junction of Route 79 and Interstate Route 70, in St. Charles County. Route 79, at the place of the collision, runs generally north and south and is straight and level, with a concrete roadway some 22 feet in width and shoulders on either side nine or ten feet wide. The roadway is higher than the surrounding farm land on the east, and there is an embankment along the east side of the highway. The weather was clear and the pavement dry.

Three vehicles were involved. One was a pickup truck owned by plaintiff's husband, Aaron Hodge, and in which he and another passenger were riding. The second was a 1955 Chevrolet station wagon in which Charles W. Gray was the sole occupant. The third vehicle was a Plymouth convertible, driven by Miles W. Barber and in which Benjamin Jones was a passenger. None of the five individuals survived for a time which permitted a statement regarding the occurrence. There were no other eyewitnesses. Appellant's contention here is that the circumstantial evidence made no submissible case on plaintiff's theory that the cause of the occurrence was Gray's operating his automobile on the wrong side of the road.

Both parties to this appeal concede that the evidence warranted a finding that Hodge was traveling north in his pickup. Hodge was a commercial fisherman who caught fish in the Mississippi River in the vicinity of Clarksville, located on Route 79, some 40 miles north of the accident scene. Hodge peddled his fish on a route in St. Louis. He had left Clarksville for St. Louis early in the morning of October 1 and was seen in St. Louis later in the morning. On the basis of his general op-

erating precedures, he would have been returning to Clarksville from St. Louis at the time of the occurrence here.

Barber and Jones had left St. Louis at around 10:00 A.M. on October 1 to go to Jones's place near Old Monroe, on Route 79, some eight miles from the scene of the accident. They went there to cut the grass and a reasonable assumption is that they were returning to St. Louis, proceeding south on Route 79.

Gray left his residence in St. Louis approximately an hour before the accident. He was going fishing in the Mississippi near Elsberry, some 25 miles north of the collision scene and on Route 79. The time of his departure and his destination support the deduction that he was proceeding north on Route 79 toward his destination at Elsberry at the time of the collision.

A violent collision occurred between Gray's Chevrolet and Barber's Plymouth. The left front portion of each of the vehicles was heavily damaged and was undoubtedly the point of impact. The entire left side of the Gray vehicle sustained sideswipe damage.

Gray's vehicle came to rest on the east side of the roadway, facing north, partly on the paved portion and partly on the shoulder. Barber's auto stopped on the west side of the roadway, partly on the shoulder and partly on an embankment, headed east. The two vehicles stopped some 200 to 250 feet apart according to one witness, 175 feet according to another. The Barber vehicle was some 40 feet to the south of an accumulation of dirt and glass on the roadway and the Gray Chevrolet was about three times that distance to the north of the collision debris.

The Hodge pickup came to rest below the embankment on the east side of the highway, on its top, heading south or southwest. Four tracks ran down the embankment in a northeasterly direction to the vicinity of the overturned vehicle. The pickup was to the north of the Barber vehicle and to the south of the Gray auto

and nearer the latter. There was no evidence of collision damage to the pickup. A witness at a filling station some one half mile north of the collision scene and who went there immediately after his attention was attracted by a cloud of dust raised by the collision stated that the left front wheel of the pickup was still turning when he reached the collision scene.

The State Highway Patrolman who investigated the accident died before the trial. Trooper Faber, riding, on his day off, with the investigating patrolman, did testify. However, since the investigation was not his official responsibility his testimony related primarily to the position of the three vehicles when he reached the scene and the nature and extent of the damage which he observed. His other pertinent testimony was to the presence of what he described as "tell-tale marks of metal being dragged or sliding upon the highway." According to the witness, the marks were in the northbound lane of the pavement and ran in a northeasterly direction to the area where the Gray vehicle had stopped.

The witness who had rushed to the scene of the collision from a filling station approximately one half mile away testified that he observed debris, consisting of glass and dirt. He placed the heaviest concentration of debris in the southbound lane, a few feet west of the center line of the highway. He stated that there was debris in the northbound lane also. He said that the debris "was a foot over the northbound and two and one-half feet or some· thing over the southbound."

Appellant contends that plaintiff's evidence did not warrant submission of the case on plaintiff's theory that the Gray vehicle was on the wrong side of the highway at the time of the collision, that, in any event, there is no evidence to support a finding that Gray was thereby negligent and that his negligence was the proximate cause of Hodge's death. Respondent's point is that the evidence would support a finding that a collision occurred after Gray entered

the southbound lane in order to pass the northbound Hodge pickup and that the collision between the Gray and Barber vehicles forced the Hodge truck off the roadway, resulting in Hodge's death.

In support of · her position, plaintiff strongly relies upon the testimony that the concentration of debris was principally in the southbound lane. Plaintiff argues that this evidence is sufficient to permit the jury to infer that the point of collision was in the southbound lane of travel.

 There is no doubt that the location of debris after an automobile collision is circumstantial evidence of the point of collision. See Annotation: "Sufficiency of evidence, in absence of survivors or of eyewitnesses competent to testify, as to place or point of impact of motor vehicles going in opposite directions and involved in collision." 77 A.L.R.2d 580, 599. The significance of such evidence may be enhanced by evidence pertaining to its location with reference to "gouge" marks and skid or tire marks. Schneider v. Prentzler, Mo.Sup., 391 S.W.2d 307, 310 [3]; Martin v. Sloan, Mo.Sup., 377 S.W.2d 252, 258 [7]. On the other hand, the circumstances may detract from the significance of the location of debris (Schoen v. Plaza Express Co., Mo.Sup., 206 S.W.2d 536, 538–539 [2]), or the evidence may be equivocal (Berry v. Harmon, Mo.Sup., 323 S.W.2d 691, 695 [2]; Zeigenbein v. Thornsberry, Mo.Sup., 401 S.W.2d 389, 391 [2]). Furthermore, the site of the impact which the debris may indicate may not be the significant factor on the issue of negligence (Williams v. Cavender, Mo.Sup., 378 S.W.2d 537, 543 [6]).

Here, we have no evidence of skid or tire marks. There was testimony relating to "gouge" marks, but its value is slight. The witness testifying regarding the gouge marks did not describe their distance from the center line of the pavement. We do know that they were in the northbound lane and that they ran in a northeasterly di-

rection to where Gray's Chevrolet came to a stop.

The fact that the gouge marks were in the northbound lane would not preclude a finding that the collision occurred in the southbound lane. Just what part of the vehicle made the marks does not appear. Furthermore, if, as the evidence indicates, the vehicle was angling northeasterly, there would undoubtedly be continued movement of the vehicle in that direction in the split second interval between impact and the dropping to the pavement of the part of the auto which produced the gouge marks.

The witness who testified concerning the location of the debris was definite in his testimony that the debris was concentrated in the southbound lane. His testimony, coupled with the nature of the damage to the vehicles involved and their location following the collision, would we feel, justify the inference that the collision occurred in the southbound lane. Although the Gray vehicle sustained damage to its left front, the major impact to that vehicle appeared to have been concentrated at the roof post in the vicinity of the steering wheel. It also sustained sideswipe damage for its entire length. This would be consistent with plaintiff's theory that the Gray vehicle had entered the southbound lane and was returning to its own lane at the time of the collision, in which event it would have been proceeding in a northeasterly direction. That it continued in that direction is shown by the gouge marks. Defendant's theory that the evidence equally would support the inference that Gray had turned northeasterly in order to avoid the Barber Plymouth which had entered the southbound lane ignores the location of the debris in the southbound lane and attaches greater significance to the witnesses' testimony that there was some debris in the northbound lane. We think that the jury, as it obviously did, was permitted to attach major significance to the concentration of debris in the southbound lane and to accept the presence of some debris in the northbound lane as a natural con-

sequence of the collision. In our opinion, the evidence was sufficient to permit the reasonable conclusion that the collision occurred in the southbound lane.

 Defendant asserts that, even so, the evidence does not support a finding of negligence, because a driver is not always negligent in driving to the left of the center of the roadway. There may be circumstances which excuse a motor vehicle operator who drives on the wrong side of the roadway, but his presence there is sufficient to present an issue of negligence, with his excuse or reason a matter for the jury's consideration. Here, we have only the fact of presence on the wrong side of the road, without evidence of reason or explanation. From that fact alone, the jury could find Gray negligent. Brawley v. Esterly, Mo.Sup., 267 S.W.2d 655, 660 [6, 7].

There remains the question of causation. Does the evidence justify the inference that the collision, due to Gray's negligence, which we have concluded that the jury might have found, caused Hodge's vehicle to leave the roadway and overturn? Again the problem is the reasonableness of such an inference from the established facts. The facts, as above set out, justify the inference that both Hodge and Gray were proceeding northward. The testimony that the front wheel of the Hodge vehicle was spinning when the first witness reached the scene of the collision would justify the conclusion that the collision and Hodge's leaving the roadway were closely connected in time. Likewise, the location of the Hodge pickup between location of the Gray or Barber vehicles would justify the inference that the location of the Hodge vehicle was affected by the collision between Gray's and Barber's autos. Under all of these circumstances, if, as we have found, it was reasonable to conclude that Gray was on the wrong side of the road, it is reasonable further to conclude that his object in being on the wrong side was to pass the Hodge vehicle. The fact that Gray's vehicle proceeded three times farther from the site of the collision than the Barber auto would indicate a speed of operation of the Gray vehicle associated with a passing maneuver.

In our opinion, plaintiff's evidence did support reasonably plaintiff's theory and was sufficient to permit a jury finding consistent with such theory.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.