Nancy K. BENTLEY and Rebecca Ann Bentley and Samuel Boyd Bentley, minors, by Nancy K. Bentley, their mother and next friend, Plaintiffs-Respondents,

v.

Mildred CREWS, Executrix of the Estate of Herbert A. Mahler, Deceased, Defendant-Appellant.

No. 41616.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 8, 1981.

Motion for Rehearing and/or Transfer Denied Jan. 15, 1982.

Application to Transfer Feb. 16, 1982.

Wuestling & James by William F. James, St. Louis, for defendant-appellant.

Gray & Ritter by Charles E. Gray, St. Louis, for plaintiffs-respondents.

SATZ, Judge.

This is a wrongful death action in which there are no survivors and no other eye witnesses. Plaintiffs are the widow and minor children of Albert Bentley (Bentley). Defendant, Mildred Crews, is the executrix of the estate of Herbert Mahler (Mahler). Plaintiffs obtained a jury verdict and judgment of $120,000. Defendant appeals. We affirm.

The accident giving rise to this action occurred about 10:00 p. m., near a curve in Clarkson Road, a two-lane road in St. Louis County. In this area, Clarkson Road runs north and south and, as it runs north, it curves to the west. There is no dispute that prior to the accident, defendant's decedent, Mahler, was headed north on Clarkson Road in a 1973 Toronado and plaintiffs' decedent, Bentley, was a passenger in a pickup truck which was headed south.[1] Plaintiffs' theory of negligence was that Mahler's Toronado crossed the centerline onto the wrong side of the road and collided with the pickup truck. Defendant argues the evidence equally supports the contrary theory that the pickup truck crossed the centerline onto its wrong side of the road and collided with Mahler's Toronado. Because the evidence supports two opposing theories with equal force, defendant argues, plaintiffs failed to make a submissible case. Under present Missouri law, we are constrained to disagree with defendant.

To determine whether plaintiffs made a submissible case, we review the evidence and sensible inferences in the light most favorable to plaintiffs. *E.g., Vaeth v. Gegg*, 486 S.W.2d 625, 629 (Mo.1972). Viewed in this light, the record reflects that an Officer Hoag arrived on the scene after the accident occurred. The road was wet. There were no skid marks. The primary damage was to the right front of each vehicle. Hoag found Mahler's Toronado facing northeast, blocking all of the southbound lane and part of the northbound lane of Clarkson Road. The pickup truck, in which Bentley was riding, had come to rest on the east shoulder of the road, facing southwest and was partially blocking the northbound lane.

Edwin Woods, a driver for the Chesterfield Fire District, arrived at the scene shortly after it occurred. Woods and Charles Ossenfort, another Chesterfield fireman, began to clear debris from the scene by flushing the street. Woods had not seen anyone sweeping the debris prior to his clean-up operation. The area was then lighted by two flood lights attached to the district's "Rescue Unit" and by search lights from the county helicopter. According to Woods, the area "seemed to be fairly well lit for seeing that kind of debris." Woods stated the debris was located entirely within the southbound lane of traffic. Ossenfort agreed with Woods on the location of the debris.

Plaintiffs' theory of the accident was that Mahler's Toronado crossed the centerline; its right front collided with the right front of the pickup; the force of impact spun both vehicles clockwise and carried both vehicles to their resting places, the Toronado blocking the southbound lane and facing northeast and the pickup truck on the east shoulder of the northbound lane, facing southwest. The following is a schematic diagram of plaintiffs' version of the accident:

---

**1.** The administrator of the deceased driver of the pickup truck was a defendant below. The trial court sustained his motion for a directed verdict and that ruling was not appealed.

#1 = MAHLER'S TORONADO
#2 = PICKUP TRUCK

Boiled down, plaintiffs' case rests on the damage to the vehicles, their location after the accident and the location of the debris. The momentum[2] of each of the vehicles and their angle of impact do not appear in the record. Thus, reconstruction of the accident based solely upon the damage to the vehicles and their location after the accident would be sheer speculation. At best, from the damage and location of the vehicles, it would be as plausible to infer the accident occurred in the southbound lane, as plaintiffs contend, as it would be to infer the accident occurred in the northbound lane of traffic, as defendant contends. Since the damage and location of the vehicles would support equally either of these two inconsistent factual inferences, this evidence alone fails to make a submissible case. *Lappin v. Prebe*, 345 Mo. 68, 131 S.W.2d 511, 513 (1939).

We are left then with the question whether evidence of location of debris in the southbound lane makes the location of the accident in that lane more probable than not. With general consistency, our courts have held or stated that location of debris alone does not necessarily imply the accident occurred where the debris is located. *See, e.g., Berry v. Harmon*, 323 S.W.2d 691, 695 (Mo.1959); *Schoen v. Plaza Express Co.*, 206 S.W.2d 536, 539 (Mo.1947). The location of debris fails to raise this implica-

tion because the fall of debris varies with the momenta of colliding vehicles and their angle of impact. This physical fact has been recognized and generally followed by our courts. *Schoen v. Plaza Express Co., supra* at 539; *Hamre v. Conger*, 357 Mo. 497, 209 S.W.2d 242, 248 (1948). Thus, the location of debris alone raises no single implication about the location of the accident but may raise several equally sensible and, at times, conflicting implications. *See Berry v. Harmon, supra* at 695 (Mo.1959). Recognizing this logic, other operative facts are looked for by our courts to locate the point of impact. *See, e.g., Zeigenbein v. Thornsberry*, 401 S.W.2d 389 (Mo.1966) (tire tracks, debris, location of vehicles, passenger testimony); *Brawley v. Esterly*, 267 S.W.2d 655 (Mo.1954) (skid marks, debris, damage to and location of vehicles); *Filkins v. Snavely*, 359 Mo. 356, 221 S.W.2d 736 (1949) (debris, gouge marks, position of vehicles and damage).

Having established this seemingly solid precedent, the Court deviated from it in *Hodge v. Goffstein*, 411 S.W.2d 165 (Mo. 1966). In *Hodge*, as in the present case, there were no survivors and no other eye witnesses. There were three vehicles involved in the accident: a pickup truck driven by plaintiff's decedent, Hodge, a Chevrolet station wagon driven by defendant's de-

---

**2.** Momentum = mass (weight) × velocity. *Handbook of Chemistry and Physics*, p. F–112

(59th ed. 1978).

cedent, Gray, and a Plymouth driven by one Barber. By concession and deduction, it was shown that Hodge's pickup and Gray's Chevrolet traveled north on the highway and Barber's Plymouth traveled south. Apparently, a collision occurred between Gray's Chevrolet and Barber's Plymouth. The left front portion of each vehicle was damaged and this apparently was the point of impact. There were no skid marks or tire tracks. Debris from the accident was most heavily concentrated in the southbound lane of traffic. Plaintiff's version of the accident was that Gray, traveling north, entered the southbound lane while passing the Hodge pickup, and Gray's Chevrolet was hit by Barber's Plymouth in the southbound lane as Gray was attempting to return to his northbound lane. Gray's Chevrolet then veered off in a northeasterly direction and left gouge marks in the northbound lane. In veering off, Gray's Chevrolet forced the Hodge pickup off the road.

The Court stated the concentration of the debris in the southbound lane "coupled with the nature of the damage to the vehicles involved and their location following the collision, . . ., justify the inference that the collision occurred in the southbound lane." *Id.* at 168. However, the defendant sensibly argued "the evidence equally would support the inference that Gray had turned northeasterly [in his own lane] to avoid the Barber Plymouth which had entered the [northbound] lane." *Id.* at 168. Implicitly recognizing the damage to the vehicles and their location after the accident would support either plaintiff's or defendant's theory with equal force, the Court disposed of defendant's theory by stating: L.C. 168–169.

"Defendant's theory . . . ignores the location of the debris in the southbound lane

and attaches greater significance to the witnesses' testimony that there was some debris in the northbound lane. We think that the jury, as it obviously did, was permitted to attach major significance to the concentration of debris in the southbound lane and to accept the presence of some debris in the northbound lane as a natural consequence of the collision."

On its face, this unprecedented appraisal of the probative value of debris evidence is clearly contrary to the Court's previous characterization of that evidence as generally speculative and, at best, equivocal. *See, e.g., Schoen v. Plaza Express Co., supra.* We read *Hodge* as changing the Court's former evaluation of debris evidence. Understandably, defendant attempts to distinguish *Hodge* on its facts and, thus, avoid the apparent change from *Schoen* and its progeny. Defendant emphasizes the Court in *Hodge* did "couple" the concentration of the debris in the southbound lane "with the nature of the damage to the vehicles involved and their location following the collision, . . ., [to] justify the inference that the collision occurred in the southbound lane." However, it is apparent that neither the momenta of the vehicles nor the angle of their impact was before the Court in *Hodge* and, thus, the location of the vehicles after the accident and their damage would support the plaintiff's and defendant's scenario in that case with equal force. Sensibly construed, the *Hodge* opinion changes the evaluation of debris evidence and permits the jury "to attach major significance" to the location of debris. *Hodge* has not been overruled, questioned or expressly limited by subsequent decisions. *But see, Prentzler v. Schneider*, 411 S.W.2d 135, 141 (Mo. banc 1967).[3] Therefore, we are constrained to follow the dic-

---

**3.** The *Prentzler* case was decided on the same date as the *Hodge* case. *Prentzler* was a wrongful death action. The widowed-plaintiff made a submissible case using circumstantial evidence to show defendant's decedent on the wrong side of the road. Location of debris was part of the circumstantial evidence. In evaluating the debris evidence, the Court stated: L.C. 141

"Although the area of greatest concentration of shakedown and debris was in the north lane of the highway, this fact alone does not make implicit a finding that the point of impact was in the north lane. Determination of the point of impact is peculiarly within the province of the jury."

If this statement means debris evidence alone is equivocal in locating the point of impact, the statement is contrary to the rationale of *Hodge*.

tates of *Hodge* and hold in the instant case that "major significance" did attach to the location of the debris making plaintiff's theory of negligence more probable than not. Plaintiffs, thus, made a submissible case.

Defendant also claims the trial court erred in submitting Instruction No. 3, plaintiffs' verdict director, because the instruction did not require a specific finding by the jury that Mahler was negligent. The instruction submitted reads:

"Your verdict must be for plaintiffs if you believe:

First, Herbert Mahler's automobile was on the wrong side of the road, and Second, as a direct result thereof Albert Bentley died."

Defendant claims the correct submission should have been:

"Your verdict must be for plaintiff if you believe:

First, plaintiffs are the surviving spouse and minor children of Albert Boyd Bentley, Deceased, and

Second, Herbert Mahler's automobile was on the wrong side of the road, and Third, Herbert Mahler was thereby negligent, and

Fourth, as a direct result of such negligence, Albert Boyd Bentley died." [4]

■■■■ Submission of an instruction in the form used is proper when the defendant's act or omission is negligence per se. *See, e.g., Washington University v. Aalco Wrecking Co., Inc.,* 487 S.W.2d 487, 492

(Mo.1972); *Condos v. Associated Transports, Inc.,* 453 S.W.2d 682, 687 (Mo.App. 1970). In these instances, a separate finding of negligence by the jury is unnecessary. Plaintiffs contend the instruction submitted is correct because Mahler was on the wrong side of the road and, thus, was in violation of § 304.015.2 RSMo 1969 which requires all vehicles to be "driven upon the right half of the roadway." [5] This violation of a statutory rule of the road, plaintiffs reason, was negligence per se. Defendant counters that plaintiffs cannot raise this statutory violation for the first time on appeal because plaintiffs did not plead, prove or argue any statutory violation at trial. We interpret defendant's complaint to be against a variance caused by plaintiffs first pleading common law negligence and then proving and submitting their case on a statutory violation. If this is defendant's complaint and if indeed there were a variance between pleading and proof, defendant made no objection to this variance at trial nor did she make this complaint in her motion for a new trial. In the absence of an objection to the variance, the issues allegedly not raised by the pleadings are considered tried by consent and are treated as though they had been pleaded. § 509.500 RSMo 1978, *Domijon v. Harp,* 340 S.W.2d 728, 733 (Mo.1960). *See also Hart v. Midkiff,* 321 S.W.2d 500, 507 (Mo.1959).

Defendant also argues that being on the wrong side of the road is merely evidence of negligence, not negligence per se, and,

4. Defendant also complains the instruction as submitted does not require the jury to find that plaintiffs met the "statutory qualifications necessary to bring the action." Defendant did not allege in her answer nor argue during trial that plaintiffs were not qualified to bring the action. The record indicates plaintiffs' status was an uncontested issue; therefore, the instruction could not have prejudiced defendant regardless of whether it assumed or omitted the question of plaintiffs' qualifications. *Miller v. Collins,* 40 S.W.2d 1062, 1067, 328 Mo. 313 (1931); *See also, Hanser v. Lerner,* 153 S.W.2d 806, 810–812 (Mo.App.1941); *Klohr v. Edwards,* 94 S.W.2d 99, 104 (Mo.App.1936).

5. § 304.015.2 RSMo 1969 provides:

"Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.026 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic."

therefore, in "wrong-side-of-the-road" cases, the issue of negligence must be submitted to the jury. The present case, defendant reasons, is basically no different than other "wrong-side-of-the-road" cases and, therefore, the issue of negligence should have been submitted to the jury. Under present Missouri law, we are constrained to disagree with defendant.

In some jurisdictions, violation of a statutory traffic regulation merely gives rise to an inference of negligence. *See, e.g., Zeni v. Anderson,* 243 N.W.2d 270, 276 (Mich.1976); *Smith v. Ohio Oil Co.,* 10 Ill. App.2d 67, 134 N.E.2d 526, 529 (1956). In Missouri, however, proof of such a violation is consistently said to be negligence per se. *Hamilton v. Patton Creamery Co.,* 359 Mo. 526, 222 S.W.2d 713, 717 (1949); *Condos v. Associated Transports, Inc.,* supra at 686; *Gambell v. Irvine,* 102 S.W.2d 784, 791 (Mo. App.1937); *See Wilson v. Toliver,* 365 Mo. 640, 285 S.W.2d 575, 582–583 (1955). This statement, if taken literally, would lead to a harsh and unrealistic result. It would require reasonable men to blindly obey traffic regulations under all circumstances or else be negligent as a matter of law. To avoid this unrealistic result, our courts attempt to temper the negligence per se rule with the general qualification "that traffic regulations are not unyielding and inflexible and are not to be applied rigidly, absolutely and preemptorily without regard to circumstances or conditions." *George v. Wheeler,* 404 S.W.2d 426, 430 (Mo.App.1966) and cases cited therein. At times, in applying this qualification, the traffic regulation is given a distorted construction so as to allow exceptions which its language does not suggest. *See, e.g., Politte v. Miller,* 301 S.W.2d 839, 843 (Mo.App.1957); *See also Jones v. Southwest Pump & Machinery Co.,* 227 Mo. App. 990, 60 S.W.2d 754, 758 (1933). The sensible application of the qualification simply permits the violation of a regulation to be excused or justified by circumstances or conditions contemplated by the regulation. *See, e.g., Bowman v. Ryan,* 343 S.W.2d 613, 622 (Mo.1961). Translated into practical trial terms, this means a directed verdict may not be rendered against a violator un-less he has had an opportunity to present his justification or excuse for violating the regulation, *e.g., Lix v. Gastian,* 261 S.W.2d 497, 501 (Mo.App.1949); *Wines v. Goodyear Tire & Rubber Co.,* 246 S.W.2d 525, 527–529 (Mo.App.1952); *Willhite v. City of St. Louis,* 224 S.W.2d 956, 957–58 (Mo.App. 1949), and it also means the violator is entitled to an instruction reflecting his justification or excuse if supported by the evidence. *See, e.g., Filkins v. Snavely,* 359 Mo. 356, 221 S.W.2d 736, 738 (1949); *Lewis v. Zagata,* 350 Mo. 446, 166 S.W.2d 541 (Mo. 1942); *cf. Bowman v. Ryan,* supra at 622. Affording the violator this opportunity, however, does not change the injured party's method of submitting his case to the jury. The injured party does not submit the issue of negligence to the jury. The violation of the regulation is negligence as a matter of law. Thus, only the violation of the regulation and its causal connection to the injury is submitted to the jury. *E.g., Lincoln v. Railway Express Agency, Inc.,* 359 S.W.2d 759, 766 (Mo.1962). This is the format designated by MAI for submitting negligence per se, *see* MAI 17.17, 17.18, and plaintiffs' verdict director properly followed this format. Naturally, defendant would have been entitled to an instruction on justification or excuse if supported by the evidence. The present record, however, reveals no evidence justifying or excusing defendant's decedent being on the wrong side of the road in violation of § 304.015 RSMo 1969, nor does defendant argue there was such evidence. Thus, on the present record, the failure of plaintiffs' verdict director to submit the issue of negligence was not error.

In reaching this conclusion, we do not mean to question the cases cited by defendant which state that being on the wrong side of the road is merely evidence of negligence. In those cases, the violation of a statutory traffic regulation was not in issue, and the standard of care was thus properly set by the jury. *See, e.g., Scott v. Club Exchange Corp.,* 560 S.W.2d 289 (Mo. 1978); *Pittock v. Gardner,* 530 S.W.2d 217 (Mo.1975); *Friederich v. Chamberlain,* 458

S.W.2d 360 (Mo.1970). In cases like the present case, involving a violation of a statutory traffic regulation, however, our Supreme Court has decided to accept the statutory standard of conduct set by the legislature and the Court applies that standard in negligence cases. That decision absolves the jury from setting the standard of care. An obvious incongruity is created by the two sets of cases. In an action for breach of the common law rules of the road, being on the wrong side of the road is only evidence of negligence and the jury is required to make a specific finding of negligence. However, in an action for breach of a statute which simply codifies the common law rules of the road, being on the wrong side of the road is negligence per se and the issue of negligence is not even submitted to the jury.[6] We acknowledge this incongruity, but without further direction from our Supreme Court, we are constrained to hold that, on the present record, the presence of defendant's decedent on the wrong side of the road was negligence per se, not merely evidence of negligence, and the issue of negligence was not required to be submitted to the jury.

Defendant next complains that the court improperly rejected her offer of proof showing the concentrations of alcohol in the blood of plaintiffs' decedent, Bentley, and in the blood of the driver of the pickup truck, Fair. Apparently, defendant's theory underpinning her offer of proof was that Fair, in an intoxicated condition, negligently drove his truck onto the wrong side of the road, colliding with Mahler, and Bentley was contributorily negligent for becoming and remaining a passenger of Fair while Fair was in an intoxicated condition.[7] More specifically, defendant theorizes that part of her offer of proof, the County Medical Examiner's Autopsy Report, would show Fair had a blood alcohol concentration of 0.26 grams alcohol/100 milliliters-blood,[8] and this concentration, according to defendant, had previously been shown to cause intoxication. Fair's driving while intoxicated would be a violation of former § 564.440 RSMo 1969,[9] and, thus, defendant argues, Fair would be negligent per se. Fair's negligent operation of his pickup truck "[c]oupled with the damage to the right side of both vehicles could reasonably" lead the jury to infer "that Fair was weaving back and forth across the centerline immediately

6. This incongruity is avoided when the statute lays down the standard of conduct in general terms of reasonable care. In these instances, instructing the jury in the terms of the statute necessarily calls for an exercise of judgment by the jury on reasonable care. Thus, in *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 687 (Mo.App.1970), the jury was not instructed to make a specific finding of negligence but it was instructed, in terms of the statute in issue, to find for the plaintiff if the defendant failed to drive "as close as practicable to the right hand edge of the highway." Making the latter determination, the court stated, was effectively making a determination of negligence. *Id.* at 687. *See also Lincoln v. Railway Express Agency, Inc.*, 359 S.W.2d 759, 765–66 (Mo.1962) for a discussion of the significant effects that differences in statutory language have on instructions.

7. For purposes of argument on appeal, defendant capsulized her theory into an instruction which appears in her brief although it was not presented to the trial court. This instruction reads:

"Your verdict must be for defendant if you believe:

First, plaintiff entered and/or remained in defendant's automobile knowing that defendant was intoxicated to the extent that driving ability was impaired, and

Second, plaintiff was thereby negligent, and

Third, such negligence and the impaired driving ability of defendant directly caused or directly contributed to cause any damage plaintiff may have sustained."

8. Only the bare figure 0.26 appears in the transcript. We assume this figure was stated in terms of the relevant statutory concentration of grams of alcohol per 100 milliliters of blood. § 577.030.2 RSMo 1978. The tests determining the concentrations were made a day after the collision. We express no opinion about the probative value of tests for blood alcohol conducted on cadavers, in particular, those tests conducted one day after death.

9. § 564.440 RSMo 1969 prohibited driving while intoxicated. The first two violations were misdemeanors. The third and subsequent violations were felonies. Present § 577.010 RSMo 1978 replaces and essentially tracks § 564.440.

prior to the collision and such negligent driving caused the accident." Having, thus, established Fair's driving to be the cause of the accident, defendant then reasons that Bentley was contributorily negligent for being Fair's passenger. This same or similar reasoning was presented to the trial court and the court rejected defendant's reasoning and overruled her offer of proof on the ground, among others, that the offer was irrelevant.

Defendant does correctly point out that a violation of former § 564.440 RSMo 1969 may be negligence per se. *Bowman v. Heffron*, 318 S.W.2d 269, 273 (Mo.1958). But, as defendant's reasoning demonstrates, the violation is actionable negligence only if it is the proximate cause of the injury in issue. *Henry v. Baker*, 419 S.W.2d 486, 490 (Mo.App.1967). In the present case, even if it were assumed that Fair's blood alcohol was relevant to show Fair was driving while intoxicated, there still would not be a single operative fact to support an inference that Fair's intoxication would cause him to drive erratically or to support the additional inference that his inferred erratic driving caused the collision. Thus, evidence of Fair's blood alcohol concentration was not relevant, *Doisy v. Edwards*, 398 S.W.2d 846, 849–50 (Mo.1966); *Bohn v. James*, 573 S.W.2d 448, 449 (Mo.App.1978); *Cheatham v. Chartrau*, 237 Mo.App. 793, 176 S.W.2d 865, 868 (1944); see *Sewall v. M. F. A. Mutual Ins. Co.*, 597 S.W.2d 284 (Mo. App.1980), and the trial court's ruling was correct.

Judgment affirmed.

SMITH, P. J., and SIMON, J., concur.